**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHAN ZOURAS LLP, an Illinois limited liability partnership, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 14-cv-943 |
| | ) | Magistrate Judge Young B. Kim |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN REGISTRY LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S COMBINED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com


*Attorneys for Plaintiffs and the
Settlement Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   PROCEDURAL HISTORY ................................................................................2

III.  COMPONENTS OF THE SETTLEMENT .......................................................5

     **A.** Benefits to the Settlement Class Members ................................................5

     **B.** Incentive Award to Class Representative ................................................5

     **C.** Attorneys' Fees and Costs ......................................................................6

IV.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 ...................................................6

     **A.** Certification of the Proposed Settlement Class ......................................6

        1.   Numerosity – Federal Rule of Civil Procedure 23(a)....................7

        2.   Commonality/Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) ........................................................................8

        3.   Typicality – Federal Rule of Civil Procedure 23(a)(3) ..................9

        4.   Adequacy of Representation–Federal Rule of Civil Procedure 23(a)(4) .......10

        5.   Superiority – Federal Rule of Civil Procedure 23(b)(3)...............11

V.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL ....................................................................................................11

     **A.** Strength of the Case Measured Against the Settlement ........................13

     **B.** The Complexity, Length, and Expense of Continued Litigation ...........18

     **C.** The Amount of Opposition to the Settlement ........................................18

     **D.** The Lack of Conclusion in Reaching a Settlement ...............................19

     **E.** The Stage of the Proceedings and the Amount of Discovery Completed.............20

VI.  THE COURT APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS .............21

VII.  RESPONSE TO KRON"S COMMENTS...........................................................23

     **A.** The Settlement Documents Provide Sufficient Information Concerning Class Relief............................................................................................24

     **B.** Class Counsel Identified The Substantial Work Performed On Behalf Of The Class..........................................................................................25

     **C.** The 90-Day Deadline To Cash Checks Is Fair and Reasonable ...........27

     **D.** Notice Was Provided In Accordance With The Court's Preliminary Approval Order ......................................................................................28

VIII.  CONCLUSION ................................................................................................29

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 613 (1997) ..................................................................................................6

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) ..........................................................................................................13

*Nicaj v. Shoe Carnival, Inc.*,
2015 WL 731915 (U.S. Feb. 23, 2015)............................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)........................................................................................................8

## UNITED STATES CIRCUIT COURT OF APPEALS CASES

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ...........................................................................................11

*Butler v. Sears, Roebuck & Co.*,
2012 WL 5476831 (7th Cir. Nov. 13, 2012) ......................................................................9

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) ......................................................................................14, 15

*Cf. Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ............................................................................................27

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................................24

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..........................................................................................14

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
183 F.3d 1 (1st Cir. 1999)..................................................................................................24

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) .................................................................................12, 13, 17

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ......................................................................................19, 20

*Gene & Gene L.L.C. v. BioPay, L.L.C.*,
541 F.3d 318 (5th Cir. 2008) ............................................................................................16

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ..................................................................12

*Hayes v. Harmony Gold Min. Co.*,
509 Fed. Appx. 21 (2d Cir. 2013)..............................................................23

*In re Corrugated Container Antitrust Litigation*,
643 F.2d 195 (5th Cir. 2010) .....................................................................21

*In re Howard*,
597 F.3d 852 (7th Cir. 2010) .....................................................................26

*Ira Holtzman, C.P.A. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ...............................................................8, 15

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...........................................................*passim*

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*,
834 F.2d 677 (7th Cir. 1987) .....................................................................19

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) .....................................................................26

*Patterson v. Gen. Motors Corp.*,
631 F.2d 476 (7th Cir. 1980) ......................................................................8

*Rodriguez v. West Pub. Corp.*,
563 F.3d 948, 967 (9th Cir. 2009) .............................................................24

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) .....................................................................8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F. 3d 646 (7th Cir. 2006) ....................................................................13

*Vollmer v. Selden*,
350 F.3d 656 (7th Cir. 2003) .....................................................................23

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ...............................................12, 20, 23, 25

**UNITED STATES DISTRICT COURT CASES**

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
235 F. Supp. 2d 816 (N.D. Ill. 2002) .........................................................12

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ........................................................................26

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. 2007) ...............................................................24

*Cannon v. Texas Gulf Sulphur Co.*,
55 F.R.D. 308 (S.D.N.Y. 1969) ........................................................................14

*Connor v. JPMorgan Chase Bank et al.*,
Case No. 10-cv-1284 (S.D. Cal.) ......................................................................23

*Couser v. Comenity Bank et al.*,
Case No. 12-cv-2484 (S.D. Cal.) ......................................................................23

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ..................................................14

*Dugan v. Lloyds TSB Bank, PLC*,
2014 WL 60008 (N.D. Cal. Jan. 7, 2014) ........................................................28

*Estate of Brown v. Consumer Law Associates, LLC*,
2013 WL 2285368 (E.D. Wash. May 23, 2013) ..............................................28

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006) .........................................................................9

*G.M. Sign, Inc. v. Brink's Mfg. Co.*,
2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ......................................................15

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987) ........................................................................10

*Hall v. Bank of Am., N.A.*,
2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ..................................................20

*Heekin v. Anthem, Inc.*,
2013 WL 752637 (S.D. Ind. Feb. 27, 2013) ....................................................23

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ...............................................................10

*Hispanics United of DuPage Cty. V. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) ..................................................................12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................................19, 27

*In re Cendant Corp. Secs. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) .................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
728 F. Supp. 2d 289 (S.D.N.Y. 2010).............................................................23, 24

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................19

*In re Neopharm, Inc. Securities Litigation*,
225 F.R.D. 563 (N.D. Ill. 2004).....................................................................10

*In re RJR Nabisco, Inc. Secs. Litig.*,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)...........................................................13

*In re TD Ameritrade Acc't Holder Litig.*,
2011 WL 4079226 (N.D. Cal. Sep. 13, 2011) .................................................24

*Kenro, Inc. v. Fax Daily, Inc.*,
962 F. Supp. 1162 (S.D. Ind. 1997)..................................................................16

*Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................................24

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004)...........................................................7

*Pappas v. Naked Juice Co. of Glendora, Inc.*,
Case No. 11-cv-8276 (C.D. Cal.).....................................................................23

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006).......................................................................7

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003)......................................................................9

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992)......................................................................8

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................21

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006)..............................................................................7

*Trombley v. Bank of Am. Corp.*,
2011 WL 3740488 (D.R.I. Aug. 24, 2011)..........................................................23

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) .......................................................8

*Windows Plus, Inc. v. Door Control Servs., Inc.*,
Case No. 13-cv-7072 (N.D. Ill. Jan. 5, 2015) .....................................................28

**STATE COURT CASES**

*Mount et al. v. Wells Fargo Bank N.A.*,
Case No. BC395959 (Cal. Super. Ct.) ..................................................................23

*Schlesinger et al. v. Ticketmaster*,
Case No. BC 304565 (Cal. Super. Ct.) .................................................................23

**STATUTES AND FEDERAL RULES**

47 U.S.C. § 227.............................................................................................1, 14, 25

Fed. R. Civ. P. 23 ................................................................................... *passim*

**MISCELLANEOUS**

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2001). ........................................................................................................7

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2002) .........................................................................................................7

*Manual for Complex Litigation*
(4th ed. 2004) .......................................................................................................21

Pursuant to Fed. R. Civ. P. 23, Plaintiff Stephan Zouras LLP ("Plaintiff"), by its counsel, respectfully submits the following as its Combined Motion for Final Approval of Class Action Settlement And Response to Objections. For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.[1]

## I.      INTRODUCTION

This case is based on the allegation that Defendant American Registry LLC ("American Registry") sent unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

Class Counsel has secured a strong and hard-fought settlement with American Registry that provides Class Members with the opportunity to receive $20.00 – cash – to be paid from the Settlement Fund and in-kind relief in the form of a video subscription valued at $149. In addition, American Registry has agreed to alter its business practices regarding obtaining consent to send fax advertisements. The Settlement reached in this case – preliminarily approved by this Court on November 14, 2014 – should now be granted Final Approval.

After extensive notice was given to Class Members in accordance with the Settlement Agreement (attached as Exhibit 1 hereto) and the Preliminary Approval Order, only six Class Members sought to be excluded, and only one Class Member objected to the settlement. As such, since the Class has overwhelmingly approved the Settlement after being provided notice, and since the Settlement is demonstrably an outstanding result that meets or exceeds the requisite standards, this Settlement should now receive Final Approval.

---

[1] All defined terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement.

## II.   PROCEDURAL HISTORY

On February 11, 2014, Plaintiff filed a class action complaint ("Complaint") against American Registry in the United States District Court for the Northern District of Illinois. (Docket No. 1.) On behalf of itself and a proposed class of all individuals or entities in the United States who were sent facsimile advertisements from or on behalf of American Registry, Plaintiff alleged that American Registry sent (or had sent on its behalf) facsimile advertisements to unwilling recipients in violation of the TCPA. (*See generally* Docket No. 1.)

After receiving service of process, American Registry contacted Plaintiff in February 2014. (*See* Affidavit of Joseph J. Siprut (the "Siprut Aff."), attached hereto as Exhibit 2, ¶5.) Between February and April 2014, the Parties had an extensive series of communications in which they voluntarily exchanged information, discussed and exchanged viewpoints on the law, and had a number of specific conversations regarding American Registry's specific defenses to liability and class certification. (*Id.*)

On March 7, American Registry filed an unopposed motion for an extension of time to file its response to the Complaint. (Docket No. 12.) On April 7, American Registry filed its Answer and Affirmative Defenses. (Docket No. 16.) Meanwhile, the Parties continued their discussions. (*See* Siprut Aff. ¶6.)

On April 21, the Parties filed a Joint Initial Status Report wherein the Parties proposed a discovery schedule and requested a settlement conference. (Docket No. 20.) At the initial status hearing on April 24, District Judge Robert M. Dow, Jr. entered a discovery schedule and referred the Action to Magistrate Judge Young B. Kim for a settlement conference. (Docket No. 21.)

On April 28, Plaintiff moved to strike portions of American Registry's Answer and Affirmative Defenses. (Docket No. 24.) Plaintiff's motion was eventually stricken by Judge Dow, following the Parties reaching an agreement on settlement. (Docket No. 36.)

On May 2, Magistrate Judge Kim held a preliminary telephonic settlement conference with the Parties and scheduled an in-person conference for June 25. (Docket No. 26.) Magistrate Judge Kim instructed the Parties to conduct necessary discovery to better assess their settlement positions and to submit the settlement position statements in accordance with the Court's standing order on "Settlement Conferences." (*Id.*)

On May 7, Judge Dow vacated the discovery schedule (Docket No. 27), and on May 15, Judge Dow continued Plaintiff's motion to strike while the Parties explored settlement discussions with Magistrate Judge Kim. (Docket No. 28.)

In advance of the in-person settlement conference scheduled before Magistrate Judge Kim, the Parties exchanged settlement position statements outlining their respective claims and defenses. (*See* Siprut Aff. ¶11.)

On June 25, the Parties appeared for a settlement conference with Magistrate Judge Kim. (Docket No. 30.) During the conference, the Parties discussed their legal positions, including the strengths and weaknesses of their arguments. (*See* Siprut Aff. ¶12.) The Parties also discussed American Registry's limited financial capability of providing meaningful class-wide relief. (*Id.*) Up to this time, American Registry refused to explore settlement on a class-wide basis. (*Id.*) After nearly five hours of negotiations, the Parties concluded the conference optimistic of a potential settlement on a class-wide basis. (*Id.*) Magistrate Judge Kim continued the settlement conference to July 9. (Docket No. 30.)

During the July 9 settlement conference, Plaintiff reported that it needed additional time to consider American Registry's last settlement offer. (Docket No. 33.) The Parties continued to exchange proposals on a settlement framework that would provide class-wide relief. (*See* Siprut Aff. ¶13.) The Parties continued their negotiations thereafter, finally reaching agreement on all

materials terms of the settlement in July 2014. (*Id.*)[2] At the follow-up status on July 16, the Parties reported to Magistrate Judge Kim that they reached an agreement in principle. (Docket No. 34.) The Parties then spent several more weeks exchanging drafts of a final, written settlement agreement. (*See* Siprut Aff. ¶13.) After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement in October 2014 that was fully executed on November 4, 2014. (Docket No. 44-1 at 32.)

On November 11, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. (Docket No. 44.) The Court granted Plaintiff's Motion and entered a Preliminary Approval Order on November 14. (Docket No. 48.) The Court has set the Final Fairness Hearing for April 13, 2015, at 9:00 a.m. with papers in support thereof due on April 6, 2015. (*Id.* at ¶¶26, 28.)

On January 5, 2015, Plaintiff submitted its Motion for Attorneys' Fees and Costs. (Docket No. 49.) That motion remains pending.

On January 21, Scott A. Kron, Esq.'s objection to the proposed settlement was filed with the Court. (Docket No. 51.) Kron raised five reasons why he objected to the settlement. (*Id.*) Because Kron's objections are tenuous and unclear, on February 17, Plaintiff sought leave to depose Kron, pursuant to the Preliminary Approval Order. (Docket No. 52.) After hearing argument on the motion for leave, the Court granted the motion, but limited the deposition to three hours. (Docket No. 56.) On March 23, Plaintiff deposed Kron. (*See* Siprut Aff. ¶16.)

Plaintiff now submits this Motion in support of Final Approval.

---

[2] In Plaintiff's Motion for Preliminary Approval (Docket No. 44), Plaintiff inadvertently reported that the Parties reached an agreement in principle in October 2014.

## III.   COMPONENTS OF THE SETTLEMENT

### A.   Benefits to Settlement Class Members

The Settlement establishes the following relief for the Settlement Class Members:

- **Payments Available to All Class Members.**  Class Members shall have until the Claims Deadline to submit an Approved Claim in accordance with the Notice. American Registry agrees to pay or cause to be paid from the Settlement Fund a sum of twenty dollars ($20.00) per Approved Claim.

- **In-kind Relief.** Class Members submitting an Approved Claim will also have the option of receiving additional in-kind relief, valued at $149, in the form of a six-month video subscription, similar in the form of that found at www.americanregistry.com/video. All video subscriptions issued to Settlement Class Members will include a clear and conspicuous notice that the subscription will expire and become null and void unless registered with the Settlement Administrator within ninety (90) days after the date of issuance. To the extent that a video subscription issued to a Settlement Class Member is not registered within ninety (90) days after the date of issuance, the subscription will be void, and such subscriptions shall revert to the Defendant. In no event will the value represented by an unregistered subscription constitute abandoned or unclaimed property, and the Defendant is entitled to the return of the subscriptions.

- **Prospective Relief.** As part of this settlement, American Registry agrees to alter its business practices regarding the obtaining of consent to transmit advertisements to facsimile machines. Specifically, American Registry agrees to modify the script used by its agents when calling individuals or entities for the purpose of transmitting an advertisement via facsimile to state that American Registry is offering products or services for sale associated with the consumer's award.

- **No Unclaimed Property.** All unclaimed or expired checks or video subscriptions shall remain the sole property of American Registry and shall not be treated or considered as unclaimed property.

### B.   Incentive Award to Class Representative

Subject to Court approval, the class representative will request a service award of $2,000 in recognition of Plaintiff's contributions to the Class, the time it spent assisting with the prosecution of this case, and the risk it incurred in commencing the action, both financial and otherwise.

C.       **Attorneys' Fees and Costs**

Subject to Court approval, American Registry has agreed not to oppose Plaintiff's request for fees and costs in the amount of $175,000 to Class Counsel. These benefits are paid directly by American Registry and do not reduce or dilute the Class benefits in any way. Plaintiff's Motion for Approval of Attorneys' Fees Costs, Expenses, and Incentive Award, which substantiates Plaintiff's Counsel's fee request in detail, was filed on January 5, 2015 and is now pending before this Court. (Docket No. 49.)

**IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23**

**A.  Certification of the Proposed Settlement Class**

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), its appointment as class representative solely for the purposes of the Settlement, and appointment of its counsel as Class Counsel solely for the purposes of the Settlement.

The Plaintiff requests that the Court, for the purposes of settlement, certify a Settlement Class defined as:

> All individuals or entities in the United States who were sent one or more facsimile advertisements from or on behalf of Defendant American Registry, LLC or who own the fax machines on which the facsimiles were received.
>
> The Settlement Class does not include: (1) American Registry and its subsidiaries and affiliates, employees, officers, directors, agents,

and representatives and their family members; (2) Class Counsel;
and (3) the judges who have presided over the Litigation.

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### 1. Numerosity — Federal Rule of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, there are 356,819 potential Class Members.[3] (Siprut Aff. ¶17.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

---

[3] Due to American Registry's recordkeeping practices, it is unclear whether each of these individuals or entities actually received fax advertisements from American Registry. Nevertheless, American Registry agreed to provide Notice to all potential class members identified in its sales database and has agreed to honor all claims. (Siprut Aff. ¶17.)

**2.      Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318, 188 L. Ed. 2d 306 (U.S. 2014). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class."); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (stating that "commonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

As alleged in Plaintiff's Complaint, all Settlement Class Members share common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues for the Class include: (1) whether American Registry engaged in a pattern of sending fax advertisements; (2) the manner in which American

-8-

Registry compiled or obtained its list of fax numbers; and (3) whether American Registry violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* In this case, common questions predominate for the Class because, as alleged by Plaintiff, American Registry's conduct is *identical* with regard to all members of the proposed Settlement Class. Thus, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of American Registry's conduct.

### 3. Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is

liberally construed." *In re Neopharm, Inc. Securities Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff alleged that American Registry sent or had sent on its behalf the faxes in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Settlement Class Members' claims.

    **4.    Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the other Settlement Class Members – obtaining relief from American Registry for its marketing of its products and services by facsimile transmissions. Plaintiff has no interests antagonistic to the interests of the other Settlement Class Members. (*See* Siprut Aff. ¶19.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and

-10-

complexity. (*Id.* ¶18.) Accordingly, both Plaintiff and its counsel have adequately represented the Settlement Class.

### 5. Superiority — Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class Members' claims. The burden and expense of individual prosecution makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief.

In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.[4]

## V. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with

---

[4] As detailed in the Settlement Agreement, American Registry does not oppose the request for class certification solely for the purposes of settlement.

great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including: (1) the strength of the plaintiffs' case on the merits measured against the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; and (5) the stage of the proceedings and the amount of discovery completed. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002). "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Hiram Walker*, 768 F.2d at 889 *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A. Strength of the Case Measured Against the Settlement

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Plaintiff alleges that American Registry violated the TCPA by sending unsolicited advertisements *en masse* to thousands of facsimile machines throughout the United States. Class Counsel and Plaintiff believe they have a strong case that American Registry's conduct constituted a violation of the TCPA.[5] Plaintiff believes that through discovery and independent

---

[5] When analyzing a settlement, a court should take counsels' and the parties' views into account. *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (internal citation and quotations omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ.

investigation, it would be able to establish at trial that American Registry's actions were unlawful.

While Plaintiff believes in the strength of its case, Plaintiff must realistically acknowledge several factors which counsel in favor or acceptance of this Settlement. For instance, American Registry contends that it had prior express consent from some of the class members such that even if the faxes were advertisements, they were not unsolicited. In addition, American Registry claims that it has an established business relationship within the meaning of 47 U.S.C. § 227(b)(1)(C). If American Registry satisfies the criteria of an established business relationship set forth in that subsection, American Registry's facsimile activity is not unlawful under the TCPA. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *1 (N.D. Ill. Aug. 29, 2013) (Grady, J.) ("There are two defenses to a Junk Fax Act claim: prior express invitation or permission ('PEP') and established business relationship ('EBR')."). Furthermore, American Registry asserts that it is not vicariously liable for the actions of any third party that sent the faxes.

Informal discovery has also revealed that American Registry may successfully challenge class certification on a contested basis. For example, if American Registry demonstrates that either PEP or EBR applies to Plaintiff, then both the typicality and adequacy elements of Rule 23 are jeopardized. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small

---

7905 (MBM), 1992 WL 210138, at *4, (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Grubhub and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.").

Furthermore, "given the variety of circumstances in which such numbers may be distributed (business cards, advertisements, directory listings, trade journals, or by membership in an association), it [is] appropriate to treat the issue of consent in any complaint regarding unsolicited facsimile advertisements *on a case-by-case basis* " and that "express permission to receive a faxed ad requires that the consumer *understand* that by providing a fax number, he or she is agreeing to receive faxed advertisements." *CE Design*, 637 F.3d at 726 (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853) (emphasis original). *But see Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients."), *reh'g denied* (Sept. 24, 2013), *cert. denied*, 134 S. Ct. 1318 (2014).

Similarly, American Registry's PEP and EBR defenses may impede the predominance element of Rule 23. *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, 2011 WL 248511, at *8-9 (N.D. Ill. Jan. 25, 2011) ("[W]ere the Court to certify the Complaint's proposed class, it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time. . . . [I]t seems unavoidable that the Court would have to conduct a series of mini-trials to determine the facts of prior business relationships and consent. It would have to do so both to establish the

-15-

population of the class, and to determine liability."); *Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318, 326 (5th Cir. 2008) ("[T]he plaintiff had "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class . . . this leads to the conclusion that myriad mini-trials cannot be avoided."); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) ("Because Kenro's class definition would require the court to conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements, Kenro has failed to meet the requirements of Rule 23(a).").

To be clear, Plaintiff is not suggesting that class certification would be impossible here. But, we are acknowledging what we must: the issues of PEP and EBR loom large in TCPA cases such as this, where American Registry has contended that the recipients of the faxes at issue each gave their permission to receive the faxes. If we proceeded all the way through fact discovery and briefed class certification on a contested basis, and if the Court were to deny class certification, the Class would get *nothing*. And even if a Class were certified, we would still have to continue prosecuting the case to prevail on liability – which American Registry would surely challenge based not only on the content of the fax, but also on the grounds that the fax campaign was orchestrated by a third-party for which it is not vicariously liable. These litigation risks, coupled with the substantial material benefits the Settlement will garner for Settlement Class Members, weigh in favor of final approval of the Settlement. While Plaintiff believes in the strength of its liability case, it must realistically recognize that a finding of no liability is possible.

Also, the sheer amount of time it will take to litigate the case to conclusion weighs in favor of accepting the Settlement now. Under this Settlement, the Settlement Class will realize

substantial and immediate benefits once the Settlement is approved. As explained above, the Settlement allows Settlement Class Members to receive monetary, in-kind, and injunctive relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If American Registry were to prevail on any of its asserted defenses, Settlement Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a monetary payment of $20 and in-kind relief valued at $149 per Settlement Class Member, along with injunctive relief requiring American Registry to alter its business practices is a meaningful achievement. Accordingly, the Settlement provides a tangible benefit to all those affected by American Registry's alleged violation of the TCPA.

In all events, a settlement will not be rejected simply because it does not provide a complete victory to the plaintiffs (assuming that "complete victory" could be defined within the context of this litigation). *See Hiram Walker*, 768 F.2d at 889. While it might be possible that, if the case were litigated to a conclusion, some class members would be able, at some unknown point in the future, to obtain a greater recovery through individual proceedings, it is also possible they could get less or nothing at all. Moreover, that recovery would be years in the future, at significantly greater expense to the Class. There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.

This first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the Settlement because the class would receive substantial benefits despite American Registry's colorable defenses. A comparison of the many obstacles to success on the merits in this class

action against the monetary and other benefits contemplated by the Settlement Agreement supports the conclusion that this Settlement is fair, reasonable and adequate.

### B. The Complexity, Length, and Expense of Continued Litigation

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of American Registry's current and former employees. American Registry intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. American Registry would present – and Plaintiff would necessarily attempt to rebut – evidence and testimony on whether individual Class Members provided prior express consent to or had an existing business relationship with American Registry. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C. The Amount of Opposition to the Settlement

Since this Court granted preliminary approval of the Settlement on November 14, 2014, only six Class Members have sought exclusion from the Settlement and only one as objected. (*See* Declaration of Jay Geraci re: Notice Procedures (the "Geraci Decl."), attached hereto as Exhibit 3, ¶¶6-7.) The Class Members' requests for exclusion are brief. One Class Member sought exclusion because it did not recall whether it received a fax advertisement at all. (Geraci Decl. at Ex. C, Exclusion Request from Sunset Science Park.) Another Class Member sought exclusion asserting that American Registry has "been absolutely a nuisance" and stating that American Registry "is of no interest to [its] business whatsoever." (*Id.*, Exclusion Request from G&G Machine Shop, Inc.) ***None*** of the Class Members seeking exclusion, however, suggested

that the Settlement did not provide meaningful relief. Thus, there has been little opposition to the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 961 (N.D. Ill. 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object."); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that "99.9% of class members have neither opted out nor filed objections. . . is strong circumstantial evidence in favor of the settlements"), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weighs strongly in favor of final approval.

### D.  The Lack of Collusion in Reaching a Settlement

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlement was reached only after nearly two months of settlement discussions. (*See* Siprut Aff. ¶¶11-13.)

This Settlement is ***not*** the result of collusion between the parties to compromise the rights of absent class members. Recently, the Seventh Circuit reversed approval of a settlement where it held "almost every danger sign" was present. *Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014). Specifically, the Seventh Circuit found the following issues: fatal conflicts of interest; opposition by named plaintiffs; a provision requiring class members to risk recovering nothing by submitting their claims to arbitration, where the defendants had reserved defenses, in order to be eligible for any meaningful settlement distribution; an award of only coupons to a portion of the class; twelve- to thirteen-page claim forms requiring class members to submit "a slew of arcane data, including the "product identity stamp," "Unit ID Label," and purchase order number

-19-

of the product at issue; and an unnecessarily complex settlement notice. *Eubank*, 753 F.3d at 721.

None of these danger signs are present here. Neither Plaintiff nor Counsel has a conflict of interest. (*See* Siprut Aff. ¶19.) The settlement was only reached after arms-length negotiations before an experienced mediator. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) ("[I]mportantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated."). The only named Plaintiff supports the Settlement. And Class Members were not subjected to providing a slew of arcane data or fill out a 12- to 13-page claim form to receive a benefit. Under the Settlement, Class Members needed to only file a 1-page Claim Form asking for basic contact information and only 7 questions to receive a cash benefit of $20 and in-kind relief valued at $149. *See Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *8 (S.D. Fla. Dec. 17, 2014) ("The approved Claim Form should take no more than a few minutes for the average class member to review and complete and requires the submission of no supporting materials such that would be required in an individual lawsuit.")

Where – as here – the Class Members receive immediate and meaningful relief, courts have approved the settlement as fair. *See, e.g.*, *Hall*, 2014 WL 7184039, at *6 (approving settlement after examining objectors' arguments based on *Eubank*). Simply put, this Settlement resulted in all Settlement Class Members getting certain, immediate and meaningful benefits.

## E. The Stage of the Proceedings and the Amount of Discovery Completed

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. While the Parties have informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and American Registry's defenses), the amount of *formal* discovery taken is not a prerequisite to a class action settlement. Courts

have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2007) (internal citation omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted." (emphasis omitted)); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, ample information and data was exchanged as part of the informal discovery processes undertaken for settlement purposes. Class Counsel requested, and American Registry provided, information concerning American Registry's business practices in obtaining consent to send fax advertisements and creating a business relationship, the size of the Class, and the nature of the faxes. Class Counsel was thus well-equipped not just to make the decision whether to settle on behalf of the Class, but also what the terms of such settlement would be.

## VI. THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Class Members as possible who would be bound by the Settlement. In this case, direct notice by mail and website notice was available for the Class. The notice plan approved by the Court on August 29, 2014 (Docket No. 28) provided the best notice practicable to apprise the Settlement Class of the pendency of this Litigation, afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *Id.*

American Registry and Class Counsel provided the Class with Notice of the proposed settlement by the following methods, previously approved by the Court:

- **Fax Notice**. On November 2, 2014, American Registry reviewed its databases and identified 356,819 potential class members, based upon the description of the class and requirements set forth in the Preliminary Approval Order. From that list, American Registry identified all class members for whom American Registry maintained a fax number, and prepared a list for receipt of fax notice. On December 3, American Registry transmitted 76,287 faxes notices and sent 280,532 separate emails. (*See* Declaration of Avi Moskowitz, Owner of American Registry (the "Moskowitz Decl."), attached hereto as Exhibit 4, ¶¶3-4.)

- **Additional Notice.** Upon further review of the database, American Registry determined that additional individuals may have been omitted from its current database and may or may not have been included in the first wave of transmissions. Although a possibility of overlap existed in the two waves of notice, in the utmost caution, American Registry transmitted a second wave of facsimiles and email transmission to potential class members. The second wave consisted of transmitting 23,835 facsimiles on January 14 and sending 18,541 emails on January 19. All told, we transmitted notice to 399,195 potential class members, assuming there is not any overlap between the first and second waves of notice. (*See* Moskowitz Decl. ¶¶5-7.)

- **Internet Posting**. Class Counsel also set up a Website – at its own expense – and posted the relevant documents, including, but not limited to, applicable deadlines, Class Counsel's contact information, and copies of the Class Notice; a downloadable Claim Form that could be submitted by U.S. Mail; the Settlement Agreement; Preliminary Approval Order; and Fee Petition. (*See* Siprut Aff. 20.)

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## VII. RESPONSE TO KRON'S OBJECTIONS

As an initial matter, Objector Scott A. Kron, Esq. provides no support for his objections, which are mostly boilerplate in nature. This is also apparently the latest foray into the Objector realm for Kron, who routinely objects to class action settlements of all shapes and sizes, usually representing his family and friends. *See, e.g.*, *Couser v. Comenity Bank et al.*, Case No. 12-cv-2484 (S.D. Cal.) (Docket No. 71) (objection by Anne. L. Card, Kron's current partner at Kron & Card LLP); *Connor v. JPMorgan Chase Bank et al.*, Case No. 10-cv-1284 (S.D. Cal.) (Docket No. 125) (objection by Stephan A. Kron and Cheryl Kron, Kron's father and mother); *Pappas v. Naked Juice Co. of Glendora, Inc.*, Case No. 11-cv-8276 (C.D. Cal.) (objection by Adam Andersen); *Schlesinger et al. v. Ticketmaster*, Case No. BC 304565 (Cal. Super. Ct.) (objection by Erika Kron, Kron's wife); *Mount et al. v. Wells Fargo Bank N.A.*, Case No. BC395959 (Cal. Super. Ct.) (objection by Stephen Kron, Kron's father) *appeal pending*, Appeal No. B 260585 (Cal. 2d Dist. Ct. App.).

Given that Kron is the only one out of the potential 356,819 Class Members to have filed an objection,[6] and given that the substance of his objections is demonstrably frivolous (as detailed below), Kron's motives are questionable.[7]

---

[6] The low number of objections demonstrates that the Class has overwhelmingly accepted the Settlement. Courts have repeatedly held that such an "infinitesimal" amount of opposition *is* a factor strongly favoring approval of a settlement. *See Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005) (explaining that 1,159 opt-outs and 41 objections out of approximately nine-million notices sent supports approval); *accord Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (explaining that "court ha[s] discretion to find a favorable reaction . . . among class members" where there were "only fifty-four submitted objections" out of 376,301 class members receiving notification); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of class action settlement with 45 objections from a 90,000 person class); *In re TD Ameritrade Acc't Holder Litig.*, 2011 WL 4079226, at *7 (N.D. Cal. 2011) (finding that reaction of class was "positive" where

**A. The Settlement Documents Provide Sufficient Information Concerning Class Relief.**

Kron's first and second reasons assert that because the Settlement Documents[8] do not specifically identify the statutory damages available under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the precise number of faxes sent by American Registry, the Settlement Class cannot evaluate the fairness of the Settlement, including the award of attorneys' fees. (Docket No. 51 ¶¶ 1, 2.) That is not only false, but it also a misstatement of the law of this Circuit.

The Complaint clearly states that the TCPA provides for statutory damages of $500 per violation. (Docket No. 1 ¶ 28.) Plaintiff's Motion for Preliminary Approval also makes clear that approximately 297,000 persons or entities were sent faxes. (Docket No. 44 at 12; Declaration of Joseph J. Siprut ¶ 21 (Docket No. 44-2).) Moreover, the Seventh Circuit has held that it is not an abuse of discretion for the Court to approve a settlement without quantifying the expected value of continued litigation, especially, whereas here, the settlement was reached after extensive negotiations with an experienced mediator. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (holding "it was not an abuse of discretion to approve the settlement without

there were "only 23 [objections] and less than 200 [opt-outs]" out of six million class members receiving notice); *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *12 (N.D. Cal. 2007) (139 objections out of 14 million or "1 objector for every 100,720 class members" is a "low" rate "even compared to objection rates in similar class action settlements.").

[7] Perhaps Kron has realized that as a "professional objector" he can use "class action settlement proceedings to extort fees or other payments." *Trombley v. Bank of Am. Corp.*, 2011 WL 3740488, at *5 (D.R.I. Aug. 24, 2011) (citing *Vollmer v. Selden*, 350 F.3d 656, 659-63 (7th Cir. 2003)); *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 861 (7th Cir. 2014) (noting that despite the objector's pro se status, he is a "frequent class action" and "serial objector") (citing *Hayes v. Harmony Gold Min. Co.*, 509 Fed. Appx. 21, 23 n. 1 (2d Cir. 2013); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010)); *Heekin v. Anthem, Inc.*, 2013 WL 752637, at *3 (S.D. Ind. Feb. 27, 2013), *appeal dismissed* (May 17, 2014) (requiring objector to post an appeal bond in part because the attorney failed to enter an appearance and is likely a "serial objector").

[8] "Settlement Documents" refers to the Complaint (Docket No. 1), Motion for Preliminary Approval and supporting exhibits, including the Settlement Agreement, Class Notice, and Claim Form (Docket No. 44), and Preliminary Approval Order (Docket No. 48).

[quantifying the expected value of continued ligation], because "there were no 'suspicious circumstances'").

Furthermore, Plaintiff has made it public knowledge that American Registry has limited financial means to support the Settlement. (Docket No. 44 at 8.) Thus, even assuming that only one fax was sent to each of the 356,819 potential Class Members, American Registry's maximum, theoretical exposure under the TCPA is $178,409,500 for non-willful violations (356,819 x $500) or $535,228,500 for willful violations (356,819 x $1,500). Class Counsel believes that if faced with any multi-million dollar judgment, American Registry would be forced to terminate its business and/or file for bankruptcy, leaving Class Members standing in line behind other creditors at bankruptcy proceedings. While "ruinous" liability is not a defense to class certification, it can, as a practical matter, effect a party's ability to collect on a judgment. *See generally Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (discussing the holding in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)); *see also In re Howard*, 597 F.3d 852, 854 (7th Cir. 2010) (noting that "unsecured claims in bankruptcy are usually worth little"). Thus, the economic realities of this case support the fairness of the Settlement.

Simply put, Kron's first and second reasons are factually incorrect and do not account for the realities of this Settlement.

## B. Class Counsel Identified The Substantial Work Performed On Behalf Of The Class.

Kron's third objection states that Class Counsel failed to detail the work performed in reaching the Settlement. (Docket No. 51 ¶ 3.) Once again, Kron is wrong. Pursuant to the Court's Preliminary Approval Order (Docket No. 48 ¶ 29), Plaintiff filed its Motion for Attorneys' Fees, Costs, and Incentive Award on January 5, 2015. (Docket No. 49.) Plaintiff's Motion has been

publicly available for fourteen (14) days before the Objection Deadline. Of course, this was no accident, as this was structure was carefully assembled (and approved by the Court) at the preliminary approval stage. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 969 ("The Court required Class Members to file objections by February 2, 2011, and Class Counsel to file its application for Class Representatives' fees, attorneys' fees, costs, and expenses by January 26, 2011. Class Counsel in fact filed its motion for approval of attorneys' fees, costs, and expenses, and for approval of incentive awards on January 26, 2011. Objectors are therefore incorrect that Class Counsel did not file an attorney-fee application prior to the objection deadline."). *Cf. Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014) ("Class counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired. That violated the rule.") *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 2015 WL 731915 (U.S. Feb. 23, 2015).

In its Motion, Plaintiff detailed the procedural history and the specific work performed by Class Counsel. (*Id.* at 2-4, 6-8.) For example, Plaintiff stated that Class Counsel began conducting a factual and legal investigation in 2014, starting with an analysis of the facsimile advertisement issued on American Registry's behalf. (*Id.* at 6.) In addition, Class Counsel researched: (1) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (2) the elements and potential defenses for each of the proposed claims. (*Id.*) Once the initial factual and legal research had been completed, Class Counsel began: formulating the TCPA claims; drafting, preparing, and filing the Complaint; and engaging in correspondence with clients regarding the complaint and the case in general. (*Id.*) Furthermore, Plaintiff detailed the motion practice and discovery in the case. (*Id.* at 6-7.)

As of January 5, 2015, Class Counsel spent 465.6 hours prosecuting this matter, resulting in a total lodestar of $209,671. (*Id.* at 8.) Given that Class Counsel's lodestar requires a *less-than-one* multiplier, the requested fee award is reasonable. (*See id.* at 9 (awarding $175,00 based on a lodestar of $209,671 results in a 0.83 multiplier).) Accordingly, this Court, and the Settlement Class, have sufficient information to assess the fairness of Class Counsel's fee request.

### C. The 90-Day Deadline To Cash Checks Is Fair And Reasonable.

Kron claims that because the Settlement requires Settlement Class Members to cash their checks and subscribe for the free video within ninety (90) days, the Settlement is *per se* unfair. (Docket No. 51 ¶ 4.) Kron stated during his deposition that checks should be valid for six months (Deposition of Kron, attached hereto as Exhibit 5, at 41:6-9.). Kron, however, went on to concede that "the time period for the check isn't necessarily a big thing. 90 days is okay." (*Id.* at 41:20-22.) Kron simply "prefer[s] six months." (*Id.*) Kron also stated that the voided checks for the class members should be issued to each particular state's comptroller so that class members can collect the money at a later time. (*Id.* at 41:13-22.) Kron cites no support whatsoever. Not surprisingly so, as courts have routinely required class members to cash their checks within similar time constraints, or else the checks are void. *See, e.g.*, *Dugan v. Lloyds TSB Bank, PLC*, 2014 WL 60008, at *3 (N.D. Cal. Jan. 7, 2014) ("Settlement class members have sixty days to cash their checks. Those who do not cash their checks within sixty days after issuance shall no longer be eligible to receive payment."); *Estate of Brown v. Consumer Law Associates, LLC*, 2013 WL 2285368, at *7 (E.D. Wash. May 23, 2013) ("Any Settlement Class Member who fails to cash or deposit a disbursement check issued to that member after a period of 120 calendar days has elapsed from the date on which the disbursement check was issued will not receive a

share of relevant Net Settlement Proceeds but will be bound nevertheless by the terms of the relevant Settlement Agreement."); *Windows Plus, Inc. v. Door Control Servs., Inc.*, Case No. 13-cv-7072, Docket No. 45 (N.D. Ill. Jan. 5, 2015) (Gettleman, J.) (granting final approval of settlement requiring class members to cash checks within 90 days). Simply put, requiring Class Members to deposit their checks or subscribe for the video within ninety (90) days is fair and reasonable.

### D. Notice Was Provided In Accordance With The Court's Preliminary Approval Order.

Finally, Kron asserts that Notice was untimely made. Kron is wrong. The Court's Preliminary Approval Order required notice to be sent by December 5, 2014. (Docket No. 48 ¶ 8.) On November 3, 2014, American Registry reviewed its databases and identified 356,819 individuals or entities that would potentially fall within the definition of a Settlement Class Member. (*See* Moskowtiz Decl. ¶3.) Using that list, American Registry identified all Class Members for whom American Registry has a fax number or email address. (*See id.* ¶4.) On December 3, 2014, American Registry sent 76,287 faxes and 280,532 separate emails. (*See id.*) This satisfied the requirements under the Preliminary Approval Order.

Taking it upon itself, American Registry set out to make sure no potential Class Member did not receive a notice. To that end, American Registry conducted further review of its database and determined that other individuals or entities may have been omitted from the current database and may not have received the first wave of notice. (*See id.* ¶5.) Accordingly, American Registry send a sent wave of notice consisting of 23,835 faxes on January 14 and 18,541 emails on January 19. (*See id.* ¶6.) It appears that Kron was in the second wave.

This Court should not be persuaded that American Registry's attempt to ensure the Class received noticed by sending an additional, non-mandated notice should be considered as a

violation of the Preliminary Approval Order. If anything, American Registry's efforts further demonstrate why notice was adequate. In addition to the potential Class Members that the Parties understood to exist, American Registry took precautions to further expand the pool of potential Class Members. Thus, more individuals and entities have the opportunity to receive benefits under the Settlement. And importantly, no benefits would have been taken away from the previously known potential Class Members by virtue of the additional Class Members receiving benefits.

**VIII.        CONCLUSION**

For the reasons set forth above, Class Counsel requests that the Court enter an order granting final approval to the settlement.

Dated: April 6, 2015                                 Respectfully submitted,


By:     */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

***Counsel for Plaintiff and the Settlement Class***

-29-

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiffs' Combined Motion for Final Approval of Class Action Settlement And Response to Objections** was filed this 6th day of April, 2015, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.


                                               */s/ Joseph J. Siprut*
                                               Joseph J. Siprut

4834-1946-4737, v. 1