# EXHIBIT 5

Kron

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


STEPHAN ZOURAS LLP, an Illinois
limited liability partnership,
individually and on behalf of
all others similarly situated,

        Plaintiff,

   v.                    Case No. 14-CV-943

AMERICAN REGISTRY LLC, a
Delaware limited liability
company,

        Defendant.




   The Deposition of SCOTT ARON THOMPSON KRON,

taken in the above-entitled cause, before

K.C. Belden, Certified Shorthand Reporter of

the State of California, on March 23, 2015,

at 2171 Campus Drive, Suite 240, Irvine,

California, commencing at 9:15 a.m.



REPORTED BY:  K.C. BELDEN, CSR, RPR, CRR
LICENSE NO.:  6728
JOB NO.:  6172



Kron

Page 2

```
 1    APPEARANCES OF COUNSEL:

 2

 3    For Plaintiff:

 4              SIPRUT, PC
                BY:  ISMAEL T. SALAM, ATTORNEY AT LAW
 5              17 North State Street, Suite 1600
                Chicago, Illinois  60602
 6              (312) 236-0000  Fax (312) 470-6588
                isalam@siprut.com
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Kron

Page 3

1                    I N D E X

2

3   DEPONENT:                    EXAMINED BY:            PAGE:

4   SCOTT ARON THOMPSON KRON      MR. SALAM                 4

5

6

7   EXHIBITS FOR IDENTIFICATION:

8     1 - 01/16/2015 "Objection to Class Settlement        6
          in Stephan Zouras LLP vs. American
9         Registry, LLC, (Case No 14-cv-943),"
          4 pages

10

11    2 - "American Registry TCPA Settlement            29
          Litigation Claim Form" signed 01/14/2015
          by Scott A. Kron and copy of envelope,

12        3 pages

13    3 - "Class Action Complaint" and exhibits         34
          thereto, case No. 14-CV-943, 14 pages

14

15    4 - "Plaintiff's Motion for Preliminary          36
          Approval of Class Action Settlement,"
          24 pages

16

17    5 - "Plaintiff's Motion for Attorneys' Fees,     37
           Costs, and Incentive Award," 42 pages

18

19

20

21

22

23

24

25

Kron

Page 4

```
 1                    IRVINE, CALIFORNIA
 2            MONDAY, MARCH 23, 2015, 9:15 A.M.
 3
 4            SCOTT ARON THOMPSON KRON,
 5        having been first duly placed under oath,
 6        was examined and testified as follows:
 7
 8                     EXAMINATION
 9   BY MR. SALAM:
10      Q    Scott --
11           Do you mind if I call you Scott, by the way?
12      A    That's fine.
13      Q    Scott, can you state your full name for me?
14      A    Scott Aaron Thompson Kron.
15      Q    And what is your date of birth?
16      A    3/2/79.
17      Q    And your current age?
18      A    36.
19      Q    Where do you currently reside?
20      A    In Ladera Ranch, California.
21      Q    Okay.  Have you taken a deposition before?
22      A    I have -- as a deposition officer, I have taken
23   depositions before.  As a deponent, no.
24      Q    No.  Okay.  So is it fair to say you're
25   somewhat familiar with the process?
```

Kron

Page 5

```
 1      A    I am familiar with the process.

 2      Q    I'll try to go through just some of the basics

 3   as quickly as possible, then.

 4           Do you know of any circumstances such as a

 5   medical condition that would impede upon your ability to

 6   testify accurately today?

 7      A    Lack of sleep, but no.

 8      Q    Excellent.

 9           As I mentioned, my name is Ismael Salam.

10           We have a court reporter with us today.  She is

11   taking down your verbal statements.  And because she's

12   taking down your verbal statements, you know, if you're

13   going to answer a question, it can't be with a nod of a

14   head, it needs to be verbal.

15           Understood?

16      A    Understood.

17      Q    Okay.  Excellent.

18           If I ask something that you don't understand,

19   just, you know, ask me to rephrase or repeat and I'll be

20   happy to do so.

21           Is that fair?

22      A    Yes, that's fair.

23      Q    Okay.  If you answer a question, I'll assume

24   that you understood it.  Is that fair?

25      A    Yes.  That's fair.
```

Kruse Associates, Ltd.

Kron

Page 6

1     Q    And if for any reason you need to take a break,

2   just let me know.

3     A    Okay.

4     Q    No problem there.

5          So you're by yourself today.  Are you --

6   You're not represented by counsel then, I take it?

7     A    Not yet, no.

8     Q    Not yet.  Okay.

9          So did you file an objection in this class

10  action settlement in the case "Stephan Zouras, LLP

11  versus American Registry, LLC"?

12    A    I did, yes.

13    Q    Okay.  We'll go ahead and introduce the

14  objection letter.  So let's do. . .

15         (Kron Exhibit 1 was marked.)

16    Q    BY MR. SALAM:  Scott, is this your objection

17  letter or a copy of it?

18    A    It is.

19    Q    Okay.  Have you ever filed an objection to a

20  settlement before?

21    A    As a class member, no.

22    Q    Okay.  So you've filed it on behalf of a client

23  then?

24    A    I have, yes.

25    Q    Okay.  Is that just one time or how many times

Kron

Page 7

1    do you think you've done that?

2        A    Four or five times, I think.

3        Q    Okay.  And so you represented a client in each

4    of those -- you represented a class member in each of

5    those?

6        A    Yes.

7        Q    Okay.  And just generally speaking, what kinds

8    of cases were those, if you can recall?

9        A    Consumer class action cases.

10       Q    Okay.  Did any of them deal with the TCPA?

11       A    Yes.

12       Q    Can you tell me a little bit more about that

13   one?

14       A    I think it's two cases.

15       Q    Okay.

16       A    The first one was "Connor v. JPMorgan Chase."

17   And the second one was "Couser," C-o-u-s-e-r, "versus

18   Comenity Bank."

19            I'm not sure if any other TCPAs. . .  It's

20   possible.  I can't recall, though, any others.

21       Q    That's fine.

22            Did either of those cases involve other claims

23   under any other statute?

24       A    No.  Those two cases were strictly TCPA cases.

25       Q    Okay.  Have you ever prosecuted class actions

Kruse Associates, Ltd.

Kron

Page 8

1   under the TCPA?

2       A    No, I have not.

3       Q    Defended?

4       A    No, I have not.

5       Q    Okay.  So would it be fair to say that these

6   two cases are your relative experience with the TCPA?

7       A    Yes.  I believe so.

8       Q    Okay.  In these two cases, what were the bases

9   for the objections?  If you want to start with the

10  "Connor versus JPMorgan" case.

11      A    I don't recall what the specific objections

12  were.

13      Q    Even just generally?

14      A    I believe the main objection, primary objection

15  in the Connor/JPMorgan Chase was the overbreadth of the

16  release and there was no -- there was no cy-pres

17  recipient that was designated in that case, even though

18  they -- it was left undetermined and TBD later on down

19  the road if there were surplus funds.

20          There were some other objections, but I don't

21  remember specifically what they were.

22          And Couser was also really overbreadth of

23  relesae issue.  And I can't remember what the other

24  ones -- the other objections were.

25      Q    Okay.  Starting with "Connor versus JPMorgan,"

Kruse &amp; Associates, Ltd.

Kron

Page 9

1    do you recall what the outcome of your objection was?

2        A    Yeah.  I obtained relief on the objection.

3    They designated a cy-pres recipient, which was

4    Electronic Frontier Foundation, I believe is who it was.

5        Q    Do you recall what they do, Electronic Frontier

6    Foundation?

7        A    They are a consumer watchdog company.

8        Q    When you say you obtained relief, what did you

9    mean by that?

10       A    There was a dozen or so settlement conferences,

11   discussions with class counsel.  They were also

12   communicating with defense counsel about some of the

13   objections, and there was a resolution reached with them

14   dealing with the designated -- or the appointment of the

15   cy-pres recipient.

16       Q    Okay.  Did you receive any fees for your work

17   as representing the objector in the case?

18       A    It was a confidential settlement.

19       Q    Okay.

20            And what about the -- is it Couser?

21       A    Yeah, I'm not sure how it's pronounced, Couser,

22   Couser, something like that, C-o-u-s-e-r.

23       Q    So talk to me about that one.  What was --  You

24   said you objected on the basis of overbreadth?  Is

25   that --



Kron

Page 10

1      A    Of the release, yes.  There were some other

2  objections that I don't specifically recall right now.

3      Q    What was the resolution of your objections

4  there?

5      A    That one, we went to a mediation and we wound

6  up settling, a confidential settlement with the feds on

7  that one, and the settlement included a release -- or

8  not a release, but a withdrawal of objection, and then

9  they permitted a late opt-out, and the client opted out

10 on that one.

11     Q    And did you receive any monetary benefit from

12 that settlement?

13     A    It was a confidential settlement.

14     Q    Other than these four cases including the two

15 we just discussed, were there any other cases you can

16 think of where you filed an objection to a class

17 settlement?

18     A    For a TCPA?

19     Q    No.  Just in general.

20     A    Yeah.  There was one -- I think it was January

21 '14.  I can't remember the plaintiff's name, but it

22 was -- Naked Juice was the defendant.

23     Q    And what was the basis of the objection there,

24 if you can recall?

25     A    I don't remember.



Kron

Page 11

1       Q     Overbreadth probably?

2       A     No.  There wasn't an issue -- I don't recall

3   there being an issue with the release.

4       Q     Okay.

5       A     I think it had to do with -- I don't know.  I

6   would be -- I can't recall, it's been so long.

7       Q     And that was January 2014.  Right?

8       A     Yeah, I believe that's about -- that may have

9   been when we had -- it went up on appeal, and the

10  Ninth Circuit had a settlement conference with all of

11  the objectors.  I don't know, there was maybe ten of us,

12  six or seven to ten of us, something like that.

13      Q     And what was the outcome of the objection in

14  that case?

15      A     It was resolved.  I don't know that any of -- I

16  don't recall what objections were resolved, there were

17  so many different objectors.

18      Q     What about with your objector?

19      A     I don't recall any of the objections being

20  resolved.

21      Q     Oh, okay.

22            Do you recall if there was a settlement

23  agreement that was entered into?

24      A     I believe there was one, yeah.

25      Q     Between your client or you and counsel?

Kruse Associates, Ltd.

Kron

Page 12

1    A    Yes, yeah.

2    Q    Okay.  Was that confidential?

3    A    I think so, yeah.

4    Q    But you're not sure?

5    A    I can't recall specifically, no.

6    Q    Do you recall if you received any kind of

7 monetary benefit?

8    A    I don't remember.

9    Q    Okay.  So that was Connor, Couser, and then we

10 have Naked Juice.  Those are three.

11        I think you mentioned there was four in total.

12 Is there --

13    A    Five.  If I mentioned four, I am remembering

14 five now.  There's also "Mount v. Wells Fargo."

15    Q    Okay.

16    A    That case is pending.  It's on appeal.  The

17 briefing schedule hasn't been put out by the -- it's

18 with the Second District of the Court of Appeals of the

19 State of California.

20        And then the fifth case would be -- I don't

21 recall the plaintiff's name, but it's versus

22 TicketMaster.  And that case is pending.

23    Q    And when did you file your objections in the

24 Wells Fargo and the TicketMaster cases?

25    A    Oh, geez.  Wells Fargo I think was maybe August

Kron

Page 13

1    of 2014.

2        Q    Okay.  And is your objection still pending?

3    Has your objection been resolved?  Strike the previous

4    question.

5            Has your objection been resolved?

6        A    It has not.

7        Q    Okay.

8        A    That case is on appeal.

9        Q    Okay.  Is that the same for TicketMaster, your

10   objection has not been resolved?

11       A    That case, there's been no final decision on

12   the motion for preliminary approval.

13       Q    Oh, okay.

14       A    And then there is a sixth case in Delaware --

15   or not Delaware.  New York.

16       Q    And what's that case?

17       A    "In re American Express," anti -- I don't know,

18   something case, antisteering case.

19       Q    And is that case still pending?

20       A    Yeah.  Oh, man, is that a monster of a case.

21       Q    What is that about again?  What is

22   antisteering?

23       A    It has something to do with the fees American

24   Express was charging businesses.

25       Q    Okay.

Kruse Associates, Ltd.

Kron

1    A    I haven't fully developed that case.  There's

2  thousands of documents.  There's been tons of fighting

3  amongst the parties.  There's groups of objectors.  And

4  there's been fighting about confidentiality in documents

5  and court proceedings.  I have never seen so many

6  letters back and forth with the judge.  And it's a

7  strange case.

8           I don't see any end in sight on that one.

9    Q    Okay.  So Connor, Couser, Naked Juice,

10  Wells Fargo, and AmEx.

11           And there is a sixth one?

12    A    That was the "In re American Express,"

13  antisteering case.

14    Q    I must be missing one.  I'm counting five.  So

15  Conner versus JPMorgan is one; Comenity Bank, two;

16  Naked Juice, three; Wells Fargo, four; AmEx, five.

17    A    TicketMaster.

18    Q    Ah, TicketMaster.

19    A    Just so that it's clear, I don't -- I'm not a

20  class member or an objector in those cases.  I

21  represented objectors.

22    Q    Got you.

23           And can you give me a time line?  I think you

24  said Wells Fargo and Naked Juice were 2014.  Is that

25  correct?



Kron

Page 15

1    A    Yes.

2    Q    What about TicketMaster?

3    A    That's 2014, too.

4    Q    Okay.  And AmEx?

5    A    I think 2014, too.

6    Q    JPMorgan?

7    A    2014.

8    Q    And Couser?

9    A    2014.

10   Q    Any reason why you decided to file or represent

11   objectors in 2014 more so than any other year?

12   A    No.  I had a lot of clients that were seeking

13   advice about class action stuff.  And the first one is

14   what got me interested and researched it.  That client

15   was an existing business client who's a non- --

16   nonlicensed, nonactive attorney and wanted to object to

17   it.

18   Q    Who are we talking about?

19   A    That was under the Naked Juice case.  The

20   objector's name was Adam Anderson.

21   Q    Have you ever represented a friend or a family

22   member?

23   A    In the TicketMaster, my wife is an objector.

24        And in the Wells Fargo and JPMorgan Chase

25   cases, the objector is my father.

Kruse & Associates, Ltd.

Kron

1     Q     What is your father's name?

2     A     Stephen Kron, K-r-o-n.

3     Q     And what's your wife's name?

4     A     Erika Kron.

5     Q     But the first case was with Naked Juice.  Is

6   that correct?

7     A     Yes.  And that may have been filed in 2013, the

8   objection.

9     Q     Okay.

10          Scott, how long have you been practicing law?

11    A     Going on ten years.

12    Q     And where did you go to law school?

13    A     California Western School of Law.

14    Q     What year did you graduate?

15          Was it 2005?

16    A     Mine was a little odd.  I did law school in two

17   years.  I went year-round.  I started in 2002.  I

18   believe I finished in the fall of 2004.  But technically

19   I think the diploma date is 2005.

20    Q     Okay.  So, other than these six cases filed in

21   2014 or one of them possibly being in 2013, you have

22   neither been an objector nor represented an objector?

23    A     I think there's one more.  I don't remember the

24   name of the case.  It dealt with dog food.  It was out

25   of the Southern District of California, United States

Kruse Associates, Ltd.

Kron

Page 17

1    District Court.  And that one, there was no resolution.

2    The objection, I believe, was overruled, and my partner

3    and I decided, and the client also decided, not to

4    pursue an appeal of that one.  I can't remember the

5    name.

6         Q    And what year was this one again?  I'm sorry.

7    The dog food one?

8         A    It might have been 2014.

9         Q    Quite an uptick in 2014.  Right?  In terms of

10   filing objections?

11        A    I wouldn't characterize it as that.

12        Q    What would you say?

13        A    I wouldn't say anything.

14        Q    Okay.  So, just going back over them again, in

15   the JPMorgan and Comenity Bank cases, there were some

16   confidential settlements that were reached.

17             And the Naked Juice, you're not -- you can't

18   recall how -- whether or not it was resolved?

19        A    Yeah, I don't recall specifically.

20        Q    Okay.

21        A    I believe there was a settlement agreement,

22   though.

23        Q    And Wells Fargo, TicketMaster, and AmEx, those

24   are currently pending?

25        A    Yes.



Kron

Page 18

1        Q       And then the dog food case, the objection was

2    overruled?

3        A       Yeah.  No appeal was pursued.

4        Q       And no appeal was pursued.  Okay.

5                You said the dog food case was in the Southern

6    District of California.  Can you go back through the

7    courts again for these different cases?

8                Start with JPMorgan.  Where is that pending?

9        A       It's not pending.  It was the Southern District

10   of California.

11       Q       Okay.  And the Comenity Bank?

12       A       Southern District of California.

13       Q       Naked Juice?

14       A       Central District of California.

15       Q       Wells Fargo?

16       A       Superior Court of California, County of

17   Los Angeles.

18       Q       TicketMaster?

19       A       Superior Court of California, County of

20   Los Angeles.

21       Q       AmEx?

22       A       United States District Court.  I think it's the

23   Northern District of New York.

24       Q       But it's in New York?

25       A       It's in New York, yeah.

Kron

Page 19

1    Q    Okay.  So these -- let's see here -- so these

2  seven cases, this would be it?

3    A    I believe so, yes.

4    Q    Never filed any other cases prior to 2013?

5    A    No, not prior to 2013.

6    Q    Objections is what I mean.

7         So what prompted you to start representing

8  class objectors?  Can you walk me through that?

9    A    Solicitation from clients.

10    Q    So they just had complaints about settlements

11  or. . .

12    A    There was some issue a client had with a notice

13  of class action that they received.

14    Q    Okay.  Did you ever do any kind of

15  solicitations?

16    A    No.  No solicitation.  I don't do any

17  advertising at all.

18    Q    Okay.

19    A    For any cases, any clients.

20    Q    What do you primarily practice?

21    A    Civil litigation.

22    Q    What specific practice areas?

23    A    I consider myself more of a general

24  practitioner in that anything that a client asks or

25  needs that I feel competent enough to handle, I'll take

Kruse Associates, Ltd.

Kron

Page 20

1  it and handle it.  There's only certain things I won't

2  touch like intellectual property, patents -- I guess

3  that's part of intellectual property, though -- and

4  probate.

5      Q    If you had to assign percentages to the types

6  of cases that you typically handle, how would you do

7  that?

8      A    I would go through my existing caseload and

9  take the number of cases I have and the type of case it

10 is and divide it by the total number, get a percentage

11 of each of the areas of practice.

12     Q    And what would you think would be the highest

13 percentage of the areas of practice that you have?

14     A    I don't know what the percentage is.  I would

15 say more cases than others is construction related.

16     Q    Okay.  So you tend to practice more

17 construction-related cases than other cases.  So that

18 would be at least 51 percent, for example?

19     A    No.  I don't think it's that high of a

20 percentage.  I don't remember.  I know we did this in

21 December in our insurance renewal.  I don't remember

22 exactly, though, what the percentage was.

23          It was -- my recollection is it was more than

24 any other practice area, but it wasn't -- it didn't

25 comprise of -- half of our practice.



Page 21

1     Q     Okay.  What are some other major practice areas

2  that you think you have in your portfolio?

3     A     Corporate.  It should include corporate,

4  maintenance, formation, employment, transactional work.

5          Like I said, I consider myself more of a

6  general practitioner.

7     Q     And I believe I've asked this already but let's

8  go back through it one more time.

9          You have not prosecuted or defended class

10  actions.  Is that correct?

11     A     I have not prosecuted class actions.  I'm

12  currently defending two class actions.

13     Q     So you represent a defendant in those class

14  actions.  Is that right?

15     A     I do, yes.

16     Q     And what cases are those?

17     A     "Montero versus Western Pacific LP" and

18  "Piggue," P-i-g-g-u-e, "versus Chief Protective

19  Services, Inc."

20     Q     Versus what?  I'm sorry?

21     A     Chief Protective Services, Inc.

22          Although I'm not counsel of record in that

23  case, I am general counsel for the defendant.  But I

24  have been engaged in all of the matters.

25     Q     Okay.  And these two class actions, are they in



Kron

Page 22

1    federal court, state court?

2        A     State court.

3        Q     Both of them?

4        A     Yes.

5        Q     I'm sorry.  Go ahead.

6        A     They're both out of the County of Orange.

7        Q     Okay.  So Superior Court?

8        A     Yes.

9        Q     Let's deal with the Western Pacific case first.

10   What's the general allegation there?

11       A     Failure to pay wages, overtime, maintain

12   employment records.

13       Q     And what about the Chief Protective Services

14   case?

15       A     Failure to give meal/rest breaks, wage and

16   hour.  Then there's a claim on -- oh, what's the other

17   two claims. . . a claim on conducting background checks

18   of applicants, I think in violation of state and federal

19   law without their consent.  And then the other claim

20   dealt with requesting disclosure of medical information

21   as part of the application process.  And then there is a

22   Private Attorney General Act claim.

23       Q     If you had to just estimate the number of cases

24   that you have had in 2013 and 2014, could you give me a

25   guess?

Kruse Associates, Ltd.

Kron

Page 23

1      A      For each year or total?

2      Q      For each year, if you would.

3      A      For each year, anywhere from 30 to 50 cases.

4      Q      Okay.  And what about this year so far?

5             And when I say "cases," I'm talking about

6      pending cases.

7      A      Oh.

8      Q      Let's go back.  Let me make sure I was clear.

9             So in 2013, were there 30 to 50 pending cases?

10     Or did you mean new cases?

11     A      I couldn't tell you.  I meant new clients, new

12     cases.

13     Q      I see.  Okay.  Let's stick with that

14     classification then.

15            So for 2015 --

16     A      I think there's been 15 new cases, new clients.

17     Q      Okay.  So, out of all of the cases that you

18     have brought in over the past ten years or so, this

19     Western Pacific case and the Chief Protection Services

20     case would be the only class actions that you have

21     either prosecuted or defended, aside from any objections

22     that you may have filed?

23     A      No.  Prior to going out, practicing on my own,

24     I was with another firm from when I first started

25     practicing for about three and a half years, and I

Kruse Associates, Ltd.

Kron

Page 24

1    believe we defended one or two class action cases there,

2    too.  I don't remember the names.

3         Q    What was the name of your firm?

4         A    It was Andrade & Associates.

5         Q    How do you spell Andrade?

6         A    A-n-d-r-a-d-e.

7         Q    And that was your first firm out of law school?

8         A    Yes.

9         Q    Did you work anywhere else after you graduated

10   law school?

11        A    No.  Well, I worked for a construction company

12   in between passing the bar and taking the MPRE.

13        Q    Okay.  And then once you passed the bar, this

14   would be the first firm that you worked with?

15        A    Yes.

16        Q    And then what other firms or organizations or

17   what other jobs have you held after Andrade?

18        A    I went out on my own and started Law Office of

19   Scott A. Kron.  That went from 2009 to 2011.  And I

20   formed a partnership that's Kron & Card LLP.

21        Q    Who was your -- who is Card?

22        A    Anne Card.

23        Q    And how did you know her?

24        A    I didn't.

25        Q    How did you come to form --  I'm sorry.

Kruse Associates, Ltd.

Kron

Page 25

1       A    I met her from an acquaintance or friend,

2    mutual friend.

3       Q    Does Anne Card typically represent --

4            Does Anne Card represent any objectors that

5    you're aware of?

6       A    We work together as a team on all of our cases.

7       Q    Prior to receiving the class action notice in

8    this case, have you ever heard of Stephan Zouras, LLP?

9       A    Never heard of them.

10      Q    What about the actual partners' names?

11           James Zouras.  No?

12      A    No.

13      Q    Ryan Stephan?

14      A    No.

15      Q    What about American Registry, LLC?

16      A    Yes.

17      Q    When did you first hear about them?

18      A    I don't know.  Probably in 2012.

19      Q    Okay.  We'll talk more about them a little bit

20   later.

21           Scott, are you aware that, if this settlement

22   received final approval and you wanted to appeal the

23   approval, you may have to post an appeal bond?

24      A    I am aware of the "may."

25      Q    If, in the instance that you are required to

Kruse Associates, Ltd.

Kron

Page 26

1    post an appeal bond of $5,000, would you be willing and

2    capable?

3        A    Begrudgingly, yes.  I don't know so much as

4    willingly.  It would have to be a court order.

5        Q    Okay.  So let's turn to your objection letter

6    that you have in front of you there.

7             Do you recall when you received notice of the

8    settlement?

9        A    I recall receiving the notice of settlement.  I

10   don't recall the exact date.  But, in reference to

11   Exhibit A attached to the objections, it has a fax

12   header date of January 14, 2015, at 6:00 p.m.  That

13   would be my recollection as to when I received it.

14       Q    And you referred to a fax header.

15            How did you receive this notice?

16       A    It came in my fax machine.  Well, not really

17   machine; I use an online fax so it's sent through my

18   e-mail and then it's printed from my printer in the

19   office.

20       Q    And after you received the notice, did you

21   review any documents related to the case?

22       A    After I received -- Well, one, I received -- I

23   reviewed the notice.  Then I went to the website that

24   the notice directed me to, and I reviewed what documents

25   were available on that website at that time.



Kron

Page 27

1     Q    Okay.

2     A    It's since changed.

3     Q    And what are the claims alleged in this case?

4     A    Violation of the Telephone Consumer Protection

5  Act.  The violations consist of sending unsolicited

6  faxes.

7     Q    And in the two cases that you mentioned earlier

8  in which you represented objectors, you said that those

9  two cases involved the TCPA.  That's referring to

10  JPMorgan and the Comenity Bank case.  What were the

11  allegations of those cases specifically with regard to

12  the TCPA?

13     A    Unsolicited phone calls on cellular phones.

14     Q    In both of them?

15     A    I believe so, yes.

16     Q    And what are the damages available under the

17  TCPA?

18     A    It depends on whether it's a negligent or

19  willful conduct.

20     Q    If it's negligent?

21     A    I think it's a hundred dollars per violation.

22     Q    And if it's willful?

23     A    500.

24     I believe in this case, though, it was only

25  alleged as to be willful violations.

Kron

Page 28

1    Q    Only alleged to be willful?

2    A    Yeah.  That's my recollection what the

3    complaint alleged.

4    Q    Did you review any other documents?

5    A    I did.

6    Q    Which documents were those?

7    A    The complaint, the answer to the complaint, the

8    second motion for certification, the motion for

9    preliminary approval, and motion for attorneys' fees, I

10   believe.

11   Q    And how did you access these documents?

12   A    I had to go to the Pacer -- the United States

13   District Court's Pacer system to pay for and download

14   those documents.

15   Q    How do you have a Pacer account?

16   A    Because I practice in federal court.

17   Q    And is this your Pacer account?

18   A    It is.

19   Q    Any other documents?

20   A    I don't know offhand.  I would have to go look

21   and see what I downloaded.  But that's my recollection

22   of what I reviewed.

23   Q    Did you file a claim form in the settlement

24   after receiving notice?

25   A    I did.

Kruse Associates, Ltd.

Kron

Page 29

1       MR. SALAM:  Let's introduce this right here.  This

2  is "American Registry TCPA Settlement Litigation Claim

3  Form."

4           You can mark it as Kron 2, if you would.

5           (Kron Exhibit 2 was marked.)

6       Q     BY MR. SALAM:  Scott, is that a copy of your

7  claim form?

8       A     It appears to be, yes.

9       Q     Is that your printed name and signature at the

10  bottom?

11      A     It appears to be, yes.

12      Q     Do you recall signing this document?

13      A     I recall signing, yes, a claim form.

14      Q     Did anyone assist you in preparing the claim

15  form?

16      A     No.

17      Q     Why did you file a claim form?

18      A     The notice of class action settlement that was

19  faxed to me on January 14, 2015, told me I had three

20  choices.  And it's my understanding, after reviewing --

21  Well, let me step back.

22           After reviewing some of the documentation that

23  was available on the website and the notice and the time

24  period and when I received the notice, I felt that there

25  were some anomalies with the notice and the proposed

Kron

Page 30

1    settlement, in which case I wanted to investigate it

2    further and possibly file an objection.  My

3    understanding is, in order to have standing to file an

4    objection, you have to file a claim to be -- to complete

5    the class member status.

6        Q    Are you aware that you would receive benefits

7    under the settlement if you filed a claim form?

8        A    That was my understanding.  That's what the

9    notice of class action settlement stated.

10       Q    Do you find the --

11            Do you think the benefits have any value?

12       A    Well, the cash one has value, sure.

13       Q    What about the video subscription?

14       A    To be honest, I don't even know what the video

15   subscription is.  I believe I went to their website at

16   American Registry and it doesn't give you a whole lot of

17   information as to what this video service is or does.

18   At least that's my recollection.

19       Q    If I were to tell you that it would be a video,

20   roughly 30 seconds, describing your achievement in the

21   legal field -- for example, let's say you had been

22   selected under -- "40 Under 40" and it was a video

23   advertising your achievement as reaching that "40 Under

24   40," would that be of value to you?

25       A    Possibly.  It would depend on where this video



Kron

Page 31

1   was going to be published.

2        Q    What if it was published --  I'm sorry.

3             Go ahead.

4        A    It would depend on who the viewers of this

5   video would be, the target market.

6        Q    What if it was published on your website?

7        A    Would it be of value to me?

8        Q    Yes.

9        A    No.

10       Q    Where would it have to be published to have

11  value to you?

12       A    Lawyers.com.  I don't know.  Somewhere --

13  AVVO.com.

14       Q    You elected to receive the video subscription.

15  Is that correct?

16       A    I don't believe you have. . .

17            (Looking at document.)

18            I did.

19       Q    The claim form is dated January 14.  Is that

20  correct?

21       A    Yes.

22       Q    And do you recall when you filed your objection

23  letter?

24       A    January 16.

25       Q    Okay.

Kruse Associates, Ltd.

Kron

1    A   That's when I sent it in for filing.  It wasn't

2  actually received and filed until January 21st.

3    Q   And is it your testimony that you only filed

4  the claim form to preserve your standing so that you

5  could file an objection?

6    A   Yeah, and take the 20 bucks and the video,

7  sure.  I don't know that I'll ever use the video.  I

8  don't know.  I've got to see what value it is.  But,

9  until then, I couldn't -- you know, I wasn't able to --

10  My recollection is I went to their website and I

11  couldn't see what this video thing was about.

12    Q   Okay.  And as far as your objection letter,

13  which is before you labeled as Kron 1, did you prepare

14  this document?

15    A   I did.

16    Q   Did someone assist you in preparing the

17  document?

18    A   No.

19    Q   And it lists five reasons, your five reasons

20  for objecting to the settlement.  Is that correct?

21    A   That's correct.

22    Q   Did you do any research in preparing this

23  objection?

24    A   Well, I went to the AmericanRegistryFacts-

25  Settlement.siprut.com website.  My recollection is I

Kruse Associates, Ltd.

Kron

Page 33

1    went to the American Registry website to take a look at

2    the proposed video.

3              I reviewed what documents were available on the

4    claims website, AmericanRegistryFactsSettlement.siprut-

5    .com.  And I'm not sure whether I did any further

6    research or not.

7    Q    Do you have access to Westlaw or LexisNexis?

8    A    I have a subscription with Westlaw.

9    Q    Do you recall using Westlaw to do any research

10   for this objection?

11   A    Possibly on the notice time period, due

12   process -- it's possibly with that.

13   Q    Did you cite to any research that you found on

14   Westlaw?

15   A    No, I did not, not to -- not in my objections.

16   Q    So objection No. 1, if you want to take a look

17   at that for a moment, I'm going to characterize it here.

18   Would it be fair to say that one of your reasons for

19   your objection was that there was not sufficient

20   information posted on class counsel's website regarding

21   the amount of potential damages?

22   A    That's a fair statement, including the

23   documentation that was provided on the website didn't

24   include any of that information either.

25   Q    And the documentation, you were talking about



Kron

Page 34

1   the complaint, the motion for preliminary approval,

2   et cetera?

3        A     I don't recall -- there might -- I don't recall

4   specifically what documents were available on the

5   website at that time.  I know there was no motion for

6   attorneys' fees that was posted.  I can't recall if the

7   motion for preliminary approval was posted on the

8   website or not.

9        Q     Was the complaint posted?

10       A     I don't think so, no.  Because I'm almost

11  positive I had to pay for that one.

12             I believe it's posted now, though.

13       MR. SALAM:  Let's introduce this one.  You can label

14  it as Kron 3.

15             (Kron Exhibit 3 was marked.)

16       Q     BY MR. SALAM:  Scott, I'm handing to you the

17  "Class Action Complaint" in this case.

18             Does this look familiar?

19       A     (Looking at document.)

20             It does.

21       Q     Did you read this document prior to filing your

22  objection?

23       A     I don't recall when I read the document but

24  I've read it.

25       Q     Can you take a look at paragraph 28 for me.

Kruse & Associates, Ltd.

Kron

Page 35

1        Do you recall reading paragraph 28?

2    A    I do.

3    Q    Paragraph 28 states that plaintiff could

4   receive at least $500 in damages for each violation of

5   the TCPA.

6        Is this a fair characterization of the

7   allegation?

8    A    That's what the document says.

9    Q    Let's take a look at objections 2 and 3.  I'll

10  give you a moment to look those over.

11   A    (Looking at document.)

12       Um-hmm.

13   Q    So is it a fair characterization to say that

14  objections 2 and 3 say that there was not sufficient

15  information regarding what class counsel did to

16  prosecute the case and what amount class counsel would

17  seek in its fee -- motion for fees?  Is that correct?

18   A    No.

19   Q    How would you characterize it?

20   A    Well, as number 2 states, objection No. 2, due

21  to lack of information concerning the potential for

22  recovery at trial and the number of unsolicited faxes

23  sent, class members are unable to weigh or consider the

24  reasonableness of the sought-after attorneys' fees

25  relative to the amount of effort put into the case, the

Kruse Associates, Ltd.

Kron

Page 36

1    relief obtained for the class, or the total amount

2    recovered.

3            And objection No. 3 has to do with the failure

4    to make the motion for attorneys' fees available so the

5    class members can evaluate that motion in light of the

6    settlement and also evaluate what class counsel did in

7    the case to obtain the settlement.

8    Q    So I'll rephrase my earlier statement.

9            Does paragraph 3 state that basically there was

10   insufficient information for the class to evaluate what

11   class counsel did to prosecute the case or what they

12   would seek?

13   A    Well, the objection speaks for itself so I'll

14   rely on that but it -- primarily the objections have to

15   do with the lack of information that was available to

16   the class members to consider and evaluate the

17   reasonableness, the adequacy, and the fairness of the

18   settlement, including the sought-after attorneys' fees.

19   MR. SALAM:  I am going to introduce what would be

20   Kron Exhibit 4.

21           (Kron Exhibit 4 was marked.)

22   Q    BY MR. SALAM:  Scott, do you recognize that

23   document?

24   A    I do.

25   Q    That's "Plaintiff's Motion for Preliminary



Kron

Page 37

1    Approval of Class Action Settlement."  Correct?

2         A    Correct.

3         Q    Did you see this document or read this document

4    prior to filing your objection?

5         A    I don't believe it was available on the website

6    prior to filing the objection.

7         Q    Did you read it any time after you filed your

8    objection?

9         A    I did.

10        Q    Okay.  Did you read through the procedural

11   history?

12        A    I did.

13        Q    Does the procedural history provide some

14   information as to what class counsel did to prosecute

15   the case?

16        A    It provides some information.

17        MR. SALAM:  Now let's introduce the "Plaintiff's

18   Motion for Attorneys' Fees."  This would be Kron

19   Exhibit 5.

20             (Kron Exhibit 5 was marked.)

21        Q    BY MR. SALAM:  Scott, do you recognize this

22   document?

23        A    I do.

24        Q    Did you read this document prior to filing your

25   objection?

Kruse Associates, Ltd.

Kron

Page 38

1      A     No.  It was not available.

2      Q     Not available on Pacer?

3      A     Not available on the website.

4      Q     And did you read it after you filed your

5   objection?

6      A     Yes.

7      Q     Did you read specifically the procedural

8   history in the motion?

9      A     I read the entire motion.  It would have

10   included the procedural history.

11      Q     Looking over the procedural history now, does

12   it indicate or provide some information on what class

13   counsel did to prosecute the case?

14      A      It provides some information, yes.

15      Q     And taking a look at pages 6 through 7 of the

16   motion, it's under subsection B, "Class Counsel

17   Performed Substantial Work on Behalf of Class."

18            Do you recall reading this section after you

19   filed your objection?

20      A      After I filed the objection and your office

21   e-mailed me a copy of this attorneys' fees motion, yes.

22   And I do recall reviewing section B, pages 6 through 7.

23      Q     And after you read through that section, did

24   you still feel that there was insufficient information

25   to evaluate what class counsel did to prosecute the

Kruse Associates, Ltd.

Kron

Page 39

1   case?

2       A    Yes.

3       Q    Did you know that class counsel spent

4   465.6 hours prosecuting this matter as reported in the

5   motion?

6       A    That's what's reported in the motion.

7       Q    Do you know that class counsel stated to the

8   court that it had a total Lodestar of $209,671?

9       A    That's what was stated in the motion.

10      Q    And you also know that class counsel was only

11  requesting $175,000.  Is that correct?

12      A    That's what's stated in the motion.

13      Q    And you're aware of that?

14      A    I am aware of what is stated in the motion,

15  yes.

16      Q    So you are also aware that, if class counsel

17  were to receive its fee request, based upon the Lodestar

18  that it has reported, it would actually receive less in

19  fees?

20      A    I don't know that the Lodestar number is

21  correct.  So I don't know whether they're receiving less

22  or more.  I don't --

23          Frankly, the settlement is a little strange.

24  In my experience, all of the cases that I have been a

25  part of, the attorneys' fees that were sought in that

Kruse Associates, Ltd.

Kron

Page 40

1   was a percentage of the recovery.  In this case it was a

2   negotiated amount directly with the defendant.

3       Q    You have never been involved in a case where

4   fees were awarded under a Lodestar method?

5       A    That's not what I said.  I have been involved

6   in a case -- in cases where fees are awarded in

7   accordance with the Lodestar calculation.

8       Q    Can you repeat what you said prior --

9            Or, actually, I don't want to have to make him

10  repeat it.  Would you mind repeating what he said?

11      A    It's not a problem.  I can repeat it.

12      Q    Sure.

13      A    What I said was I have never been involved in a

14  case as either an objector or representing an objector

15  in a class action settlement case where class counsel

16  was receiving a specific -- an amount separate and apart

17  from the settlement in the case.

18      Q    I see.  So you've always been involved where a

19  percentage of whatever the class is getting is going to

20  attorneys' fees.  Is that a fair characterization?

21      A    That's a -- that's the exact statement, yes.

22      Q    Okay.  And objection No. 4, if you would turn

23  back to your letter there, you objected on the basis

24  that class members are required to, within 90 days of

25  issuance, cash their settlement checks and register



Kron

Page 41

1    their video subscriptions.  Is that correct?

2        A    Yes.

3        Q    You say that 90 days is insufficient.  Is that

4    correct?

5        A    Partially.

6        Q    How long would class members, in your mind,

7    need to be able to cash their settlement checks?  What

8    would be fair?

9        A    I think six months is fair.  But, in regards to

10   the cash payments, what I believe would be fair and

11   would adequately protect the class, is that if the check

12   isn't cashed within the -- 90 days is even okay for the

13   check.  If the check isn't cashed within 90 days, that

14   the claims administrator cancel that check, issue a new

15   check in the name of each particular state's controller

16   for unclaimed funds and have those moneys sent to the

17   state's controller for holding for unclaimed funds for

18   those class members to collect later on down the road.

19       Q    Okay.

20       A    So the time period for the check isn't

21   necessarily a big thing.  90 days is okay, although, you

22   know, 90 days isn't very long.  Preferably six months.

23            But for the video subscription, you know, six

24   months is much more fair and reasonable than 90 days,

25   especially where you've got to make a concerted effort

Kruse & Associates, Ltd.

Page 42

1    to, one, claim it; two, actually go and -- go through

2    the whole process of creating this video and whatever

3    else is entailed with -- with collecting that coupon, so

4    to speak, or credit.

5        Q    So, if you were to only have to register for

6    the video to receive that benefit, you don't have to

7    create the video, et cetera, are you saying that 90 days

8    is still insufficient time to register for the video

9    subscription?

10       A    I think so.  I think most of the class members

11   in this case are all lawyers or professionals and have

12   busy schedules, and 90 days is probably a tough schedule

13   to meet, especially to put before any other actual cases

14   or matters that you've got, to actually spend time

15   working on what purports to be some type of advertising.

16       Q    But you do think 90 days is okay with respect

17   to the cash -- with respect to cashing the settlement

18   checks?

19       A    If the unclaimed, uncashed checks were to

20   revert to unclaimed funds for the state -- for each

21   state's controller to be held, to be later collected by

22   the class member.

23       Q    So, just so I'm clear and understanding this,

24   you have no problem with respect to the time.  You have

25   an issue with respect to whether or not the money is



Page 43

1    then redistributed to the claiming class members?

2        A     No.  I've got a problem with the time, too.  I

3    think it should be six months.  Six months is a fair and

4    adequate time.

5        Q     Okay.  Because I thought prior to this you said

6    that 90 days was fair.  So now you're claiming --

7        A     I said it's okay.  I would prefer more time.

8        Q     Okay.

9              So, going back to your statement from earlier

10   today, you said that you are familiar with American

11   Registry or were familiar with American Registry prior

12   to this case.  Is that correct?

13       A     I have seen the name, yes.

14       Q     Talk to me about how you heard about American

15   Registry, as best you can recall.

16       A     Solicitation I think.

17       Q     How --

18       A     I think in 2012 I was nominated Rising Stars

19   list with Super Lawyers.  I also received my

20   Martindale-Hubbell AV rating.  And I think in connection

21   with one or both of those I started receiving

22   solicitations about awards.

23              Oh, and AVVO, too.  I was getting solicitations

24   for awards from AVVO.

25       Q     Did you buy any products from American



Kron

Page 44

1   Registry?

2       A    You know, I don't know whether they came from

3   American Registry or Super Lawyers or some other agency.

4   I did buy some plaques.  And I searched our records, and

5   I couldn't find anything with American Registry.

6       Q    It wouldn't surprise you to know that you

7   bought something from American Registry?

8       A    I don't know that I would be surprised or not

9   surprised, one way or the other.  I think I would be

10  informed if I saw something that said that I -- the

11  products that I bought ultimately came from American

12  Registry.  I just don't recall.

13      Q    Okay.

14      A    It was probably 2012 when I bought those

15  products.  Because I haven't bought anything since.

16      Q    Would it have been you who personally dealt

17  with a representative from American Registry when

18  purchasing those products?

19      A    Assuming I bought those products from American

20  Registry, it's possible.  I don't know.

21      Q    Do you have a secretary who would typically

22  handle these kinds of things for you?

23      A    2012?  No.  I didn't have a secretary.  My

24  business partner, Anne Card, may have.  I don't know.

25      Q    She may have handled buying the products for



Kron

Page 45

1    you?

2        A    She may have, yeah.  I don't know who did.

3        Q    And at that time, Anne Card and you were part

4    of the law firm Kron & Card.  Is that correct?

5        A    Yes, that's correct.

6        Q    Is it possible that you or she may have

7    provided your fax number during the purchasing of the

8    products?

9        A    I have no idea.

10       Q    Fair enough.

11            Do you recall whether or not you gave any

12   permission to American Registry to send a preview of

13   what your plaque or --

14            You said it was plaques.  Right?  I'm sorry.

15       A    Yes.  It was -- you know, I don't know who --

16   solicitations or what came from or where, I just know

17   that I recognized the name American Registry.

18            And did I give anyone permission to send me

19   faxes to solicit business?  Absolutely not.

20       Q    Did you give anyone permission to send you a

21   preview of what your plaque or icon would look like?

22       A    Nope.

23       Q    So, if you were to purchase it, you would not

24   have -- would you have wanted to see what the product

25   would have looked like prior to ordering it?  Assuming

Kron

Page 46

1    you did purchase it from them.

2       A    Well, yeah.  Anybody would want to see what it

3    is that they're buying before they buy it.

4       Q    So, if you wouldn't have wanted them to send a

5    preview to a fax, how would they have sent the preview

6    to you?

7       A    Well, it's an incomplete hypothetical,

8    speculation.

9            But I would assume that, if I were interested

10   in buying a product that I had seen advertised

11   somewhere, not solicited, but advertised, there would be

12   some type of website to go to that I could review what

13   it would look like.

14      Q    If they told you that they can only send you a

15   preview of your plaque or icon via fax, do you think

16   that you or Anne would have let them send the preview

17   over?

18      A    I have no idea.  That's --  It didn't happen so

19   I don't know.  I mean I would be speculating as to what

20   we would have done in the past had we received something

21   like that.

22      Q    Are you saying that American Registry never

23   sent you a preview when you said it didn't happen?  They

24   never sent you a preview via fax of what your marquee

25   or -- plaques, excuse me?



Kron

1      A     I don't recall doing business with American

2     Registry.

3      Q     Okay.

4      A     So I don't know what they sent --

5            The first thing that I've ever seen that was

6     sent was -- I handed you the faxes as part of the

7     subpoena, as to what I received, is I received a fax

8     that looked like a marquee, an advertisement of a

9     plaque.

10           And then I sent it back with the box marked,

11    checked, asking to be removed from their contact list.

12    I found it offensive that they would fax me that.  My

13    faxes are done online, and I'm charged for every page

14    that's either received or sent out and faxed.

15     Q     I have two faxes here, Scott.

16     A     That's correct.  One of them is --

17           So the one that has no handwriting on it that

18    was faxed on November 19, 2013, at 12:00 p.m., that's

19    the fax that I received from -- it shows as American

20    Registry on it.

21           And then on November 19, I handwrote on the

22    bottom left-hand corner of the fax that they had sent me

23    "unsubscribe" with an arrow pointed towards a checked

24    box that was next to language that said:

25           "To remove the following fax number

Kron

Page 48

1      (949) 613-8472 from all American Registry

2      promotions, please check the box and fax this

3      back to (561) 952-4100 or call toll free at

4      (855) 650-6931 and provide your fax number to

5      be removed.  You may also e-mail your request

6      to unsubscribe at AmericanRegistry.com along

7      with your fax number."

8     Q   And just so I'm clear with what I'm looking at,

9  these both have the same date on them, November 19,

10  2013, at 12:00 p.m.  So is this a copy of the same

11  thing?

12     A   It's a copy -- yeah, all I did was just print

13  the fax that I received from American Registry and

14  handwrote on it and then --

15     Q   Okay.

16     A   -- scanned it and faxed it back to them.  And I

17  faxed it back to them on November 19 at -- it looks like

18  5:08.

19     Q   And so we're dealing with one fax.  Right?  Not

20  two?  I just want to make sure since I have two faxes

21  here.

22     A   Well, it's two faxes.  One received, one sent.

23     Q   Okay.  Understood.

24     Give me like five minutes.  I think we're going

25  to be done here.  Take a break for five minutes.

Kruse Associates, Ltd.

Kron

Page 49

1           (Recess from 10:18 a.m to 10:22 a.m.)

2     MR. SALAM:  Going back on the record.

3     Q     BY MR. SALAM:  Scott, did you have any

4  communications with American Registry or counsel for

5  American Registry after you filed your objection?

6     A     No.

7     Q     How about since the last time you received

8  solicitations or responded to solicitations via

9  facsimile?

10    A     No communications with American Registry or

11 their counsel.

12    Q     Okay.

13          And have you ever been accused of committing

14 perjury?

15    A     Yes.

16    Q     In what context?  Can you describe that for me

17 a little bit?

18    A     A former employer, Andrade & Associates,

19 accused me of it.  Unfounded allegations.

20    Q     And how did that accusation take place?  Was it

21 just in-house, "Hey, Scott, you". . .

22    A     No.  There was a -- so after I left --

23          This is all really irrelevant to these

24 proceedings.

25    Q     I just want to make sure there were no -- any

Kruse & Associates, Ltd.

Kron

Page 50

1    kind of court proceedings or any kind of official

2    investigation into whether or not you committed perjury.

3         A    No.  Well, yes and no.  Andrade sued a client

4    for malpractice, the client counterclaimed --  No, I'm

5    sorry.

6              Andrade sued the client for fees that were

7    owed.  The client cross-complained against him for

8    malpractice.

9              I had testified on behalf of that client in a

10   proceeding for a case for Andrade.  And because I was

11   still friendly with the client, Andrade leveled false

12   accusations against me that I had testified untruthfully

13   in those proceedings.  He sought an order to show cause

14   re contempt in the case.  I forget the name of the case.

15   And the court denied the order to show cause.

16             Andrade also filed a State Bar complaint, who

17   investigated it and closed it with no charges and no

18   findings of any perjury or contempt or anything of the

19   like.

20             They were absolutely false allegations.  It was

21   out of pure vindictiveness on his part because he was

22   upset that I -- one, I abruptly quit working for him.  I

23   gave him two weeks' notice but at the time it was a

24   terrible economy.  It was a bad idea for anyone to

25   leave, but I was basically running the guy's firm for



Kruse Associates, Ltd.

Kron

Page 51

1    him.  I figured I would do it on my own.  Clients left

2    with me.

3            That particular client I tipped off that

4    Andrade was planning on doing that.  He was waiting for

5    the statute of limitations for malpractice to elapse

6    before he sued, and I felt that that was unethical and

7    unfair to that client so I tipped the client off.  And

8    that's what he was upset about and leveled false

9    accusations and charges against me.

10   Q    Okay.  So an investigation was filed with the

11   State Bar, no charges or any other formal action was

12   taken against you by the State Bar.  Right?

13   A    That's correct.

14   Q    All right.  Excellent.

15           Well, I think we're all done.

16           (Discussion off record.)

17   MR. SALAM:  So, yes, you can send an electronic copy

18   to me, if you can, by April 2nd, that would be great.

19           If Scott wants an electronic copy. . .

20   THE DEPONENT:  We'll stipulate to release the court

21   reporter of her duties under the code; stipulation will

22   include submit -- sending the deponent, which is me,

23   Scott Kron, an electronic copy of the transcript.  I

24   will have 30 days to review the transcript and make any

25   changes or modifications thereto and place them on an



Kron

Page 52

1   errata sheet and sign it and send it to the deposition

2   officer.

3            So stipulated.

4        MR. SALAM:  That's fine.

5            (Deposition concluded at 10:28 a.m.)

6                         -o0o-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   STATE OF CALIFORNIA  )
                          )  SS.
 2   COUNTY OF ORANGE     )

 3

 4        I, K.C. Belden, Certified Shorthand Reporter,

 5   Certificate No. 6728 in the State of California, duly

 6   empowered to administer oaths, do hereby certify:

 7        I am the deposition officer that stenographically

 8   recorded the testimony in the foregoing deposition;

 9        Prior to being examined, the deponent was by me

10   first duly placed under oath;

11        The foregoing transcript is a true record of the

12   testimony given;

13        Pursuant to Rule 30(e) of the Federal Rules of Civil

14   Procedure, it was requested that the deponent shall have

15   30 days to review the transcript; therefore, any changes

16   made by the deponent or whether or not the deponent

17   signed the transcript cannot at this time be set forth.

18

19   Dated  3- 30- 15           .

20

21        _____
                    K.C. Belden
22        Certified Shorthand Reporter No.  6728

23

24

25
```

53

Kron

**A**

**A-n-d-r-a-d-e** 24:6
**a.m** 1:21 4:2 49:1,1
  52:5
**Aaron** 4:14
**ability** 5:5
**able** 32:9 41:7
**above-entitled** 1:17
**abruptly** 50:22
**absolutely** 45:19
  50:20
**access** 28:11 33:7
**account** 28:15,17
**accurately** 5:6
**accusation** 49:20
**accusations** 50:12
  51:9
**accused** 49:13,19
**achievement** 30:20
  30:23
**acquaintance** 25:1
**Act** 22:22 27:5
**action** 3:13,15 6:10
  7:9 15:13 19:13
  24:1 25:7 29:18
  30:9 34:17 37:1
  40:15 51:11
**actions** 7:25 21:10
  21:11,12,14,25
  23:20
**actual** 25:10 42:13
**Adam** 15:20
**adequacy** 36:17
**adequate** 43:4
**adequately** 41:11
**administer** 53:6
**administrator**
  41:14
**advertised** 46:10
  46:11
**advertisement** 47:8
**advertising** 19:17
  30:23 42:15
**advice** 15:13
**age** 4:17
**agency** 44:3

**agreement** 11:23
  17:21
**Ah** 14:18
**ahead** 6:13 22:5
  31:3
**allegation** 22:10
  35:7
**allegations** 27:11
  49:19 50:20
**alleged** 27:3,25
  28:1,3
**American** 1:9 3:8
  3:10 6:11 13:17
  13:23 14:12 25:15
  29:2 30:16 33:1
  43:10,11,14,25
  44:3,5,7,11,17,19
  45:12,17 46:22
  47:1,19 48:1,13
  49:4,5,10
**AmericanRegistr...**
  48:6
**AmericanRegistr...**
  32:24
**AmericanRegistr...**
  33:4
**AmEx** 14:10,16
  15:4 17:23 18:21
**amount** 33:21
  35:16,25 36:1
  40:2,16
**Anderson** 15:20
**Andrade** 24:4,5,17
  49:18 50:3,6,10
  50:11,16 51:4
**Angeles** 18:17,20
**Anne** 24:22 25:3,4
  44:24 45:3 46:16
**anomalies** 29:25
**answer** 5:13,23
  28:7
**anti** 13:17
**antisteering** 13:18
  13:22 14:13
**Anybody** 46:2
**apart** 40:16

**appeal** 11:9 12:16
  13:8 17:4 18:3,4
  25:22,23 26:1
**Appeals** 12:18
**APPEARANCES**
  2:1
**appears** 29:8,11
**applicants** 22:18
**application** 22:21
**appointment** 9:14
**approval** 3:15
  13:12 25:22,23
  28:9 34:1,7 37:1
**April** 51:18
**area** 20:24
**areas** 19:22 20:11
  20:13 21:1
**ARON** 1:16 3:4 4:4
**arrow** 47:23
**aside** 23:21
**asked** 21:7
**asking** 47:11
**asks** 19:24
**assign** 20:5
**assist** 29:14 32:16
**Associates** 24:4
  49:18
**assume** 5:23 46:9
**Assuming** 44:19
  45:25
**attached** 26:11
**attorney** 2:4 15:16
  22:22
**attorneys'** 3:16
  28:9 34:6 35:24
  36:4,18 37:18
  38:21 39:25 40:20
**August** 12:25
**AV** 43:20
**available** 26:25
  27:16 29:23 33:3
  34:4 36:4,15 37:5
  38:1,2,3
**AVVO** 43:23,24
**AVVO.com** 31:13
**Award** 3:17

**awarded** 40:4,6
**awards** 43:22,24
**aware** 25:5,21,24
  30:6 39:13,14,16

**B**

**B** 38:16,22
**back** 14:6 17:14
  18:6 21:8 23:8
  29:21 40:23 43:9
  47:10 48:3,16,17
  49:2
**background** 22:17
**bad** 50:24
**Bank** 7:18 14:15
  17:15 18:11 27:10
**bar** 24:12,13 50:16
  51:11,12
**based** 39:17
**bases** 8:8
**basically** 36:9
  50:25
**basics** 5:2
**basis** 9:24 10:23
  40:23
**Begrudgingly** 26:3
**behalf** 1:6 6:22
  38:17 50:9
**Belden** 1:18,24
  53:4,21
**believe** 8:7,14 9:4
  11:8,24 16:18
  17:2,21 19:3 21:7
  24:1 27:15,24
  28:10 30:15 31:16
  34:12 37:5 41:10
**benefit** 10:11 12:7
  42:6
**benefits** 30:6,11
**best** 43:15
**big** 41:21
**birth** 4:15
**bit** 7:12 25:19
  49:17
**bond** 25:23 26:1
**bottom** 29:10 47:22

**bought** 44:7,11,14
  44:15,19
**box** 47:10,24 48:2
**break** 6:1 48:25
**breaks** 22:15
**briefing** 12:17
**brought** 23:18
**bucks** 32:6
**business** 15:15
  44:24 45:19 47:1
**businesses** 13:24
**busy** 42:12
**buy** 43:25 44:4
  46:3
**buying** 44:25 46:3
  46:10

**C**

**C-o-u-s-e-r** 7:17
  9:22
**calculation** 40:7
**California** 1:19,21
  4:1,20 12:19
  16:13,25 18:6,10
  18:12,14,16,19
  53:1,5
**call** 4:11 48:3
**calls** 27:13
**Campus** 1:20
**cancel** 41:14
**capable** 26:2
**Card** 24:20,21,22
  25:3,4 44:24 45:3
  45:4
**case** 1:8 3:9,13 6:10
  8:10,17 9:17
  11:14 12:16,20,22
  13:8,11,14,16,18
  13:18,19,20 14:1
  14:7,13 15:19
  16:5,24 18:1,5
  20:9 21:23 22:9
  22:14 23:19,20
  25:8 26:21 27:3
  27:10,24 30:1
  34:17 35:16,25

36:7,11 37:15
38:13 39:1 40:1,3
40:6,14,15,17
42:11 43:12 50:10
50:14,14
**caseload** 20:8
**cases** 7:8,9,14,22
7:24,24 8:6,8
10:14,15 12:24
14:20 15:25 16:20
17:15 18:7 19:2,4
19:19 20:6,9,15
20:17,17 21:16
22:23 23:3,5,6,9
23:10,12,16,17
24:1 25:6 27:7,9
27:11 39:24 40:6
42:13
**cash** 30:12 40:25
41:7,10 42:17
**cashed** 41:12,13
**cashing** 42:17
**cause** 1:17 50:13,15
**cellular** 27:13
**Central** 18:14
**certain** 20:1
**Certificate** 53:5
**certification** 28:8
**Certified** 1:18 53:4
53:22
**certify** 53:6
**cetera** 34:2 42:7
**changed** 27:2
**changes** 51:25
53:15
**characterization**
35:6,13 40:20
**characterize** 17:11
33:17 35:19
**charged** 47:13
**charges** 50:17 51:9
51:11
**charging** 13:24
**Chase** 7:16 8:15
15:24
**check** 41:11,13,13

41:14,15,20 48:2
**checked** 47:11,23
**checks** 22:17 40:25
41:7 42:18,19
**Chicago** 2:5
**Chief** 21:18,21
22:13 23:19
**choices** 29:20
**Circuit** 11:10
**circumstances** 5:4
**cite** 33:13
**Civil** 19:21 53:13
**claim** 3:11 22:16,17
22:19,22 28:23
29:2,7,13,14,17
30:4,7 31:19 32:4
42:1
**claiming** 43:1,6
**claims** 7:22 22:17
27:3 33:4 41:14
**class** 3:8,13,15 6:9
6:21 7:4,9,25 9:11
10:16 14:20 15:13
19:8,13 21:9,11
21:12,13,25 23:20
24:1 25:7 29:18
30:5,9 33:20
34:17 35:15,16,23
36:1,5,6,10,11,16
37:1,14 38:12,16
38:17,25 39:3,7
39:10,16 40:15,15
40:19,24 41:6,11
41:18 42:10,22
43:1
**classification** 23:14
**clear** 14:19 23:8
42:23 48:8
**client** 6:22 7:3 10:9
11:25 15:14,15
17:3 19:12,24
50:3,4,6,7,9,11
51:3,7,7
**clients** 15:12 19:9
19:19 23:11,16
51:1

**closed** 50:17
**code** 51:21
**collect** 41:18
**collected** 42:21
**collecting** 42:3
**com** 33:5
**come** 24:25
**Comenity** 7:18
14:15 17:15 18:11
27:10
**commencing** 1:21
**committed** 50:2
**committing** 49:13
**communicating**
9:12
**communications**
49:4,10
**company** 1:10 9:7
24:11
**competent** 19:25
**complaint** 3:13
28:3,7,7 34:1,9,17
50:16
**complaints** 19:10
**complete** 30:4
**comprise** 20:25
**concerning** 35:21
**concerted** 41:25
**concluded** 52:5
**condition** 5:5
**conduct** 27:19
**conducting** 22:17
**conference** 11:10
**conferences** 9:10
**confidential** 9:18
10:6,13 12:2
17:16
**confidentiality** 14:4
**connection** 43:20
**Conner** 14:15
**Connor** 7:16 8:10
8:25 12:19 14:9
**Connor/JPMorgan**
8:15
**consent** 22:19
**consider** 19:23 21:5

35:23 36:16
**consist** 27:5
**construction** 20:15
24:11
**construction-rela...**
20:17
**consumer** 7:9 9:7
27:4
**contact** 47:11
**contempt** 50:14,18
**context** 49:16
**controller** 41:15,17
42:21
**copy** 3:11 6:17 29:6
38:21 48:10,12
51:17,19,23
**corner** 47:22
**corporate** 21:3,3
**correct** 14:25 16:6
21:10 31:15,20
32:20,21 35:17
37:1,2 39:11,21
41:1,4 43:12 45:4
45:5 47:16 51:13
**Costs** 3:17
**counsel** 2:1 6:6
9:11,12 11:25
21:22,23 35:15,16
36:6,11 37:14
38:13,16,25 39:3
39:7,10,16 40:15
49:4,11
**counsel's** 33:20
**counterclaimed**
50:4
**counting** 14:14
**County** 18:16,19
22:6 53:2
**coupon** 42:3
**court** 1:1 5:10
12:18 14:5 17:1
18:16,19,22 22:1
22:1,2,7 26:4
28:16 39:8 50:1
50:15 51:20
**Court's** 28:13

**courts** 18:7
**Couser** 7:17 8:22
9:20,21,22 12:9
14:9 15:8
**create** 42:7
**creating** 42:2
**credit** 42:4
**cross-complained**
50:7
**CRR** 1:24
**CSR** 1:24
**current** 4:17
**currently** 4:19
17:24 21:12
**cy-pres** 8:16 9:3,15

---

**D**

**D** 3:1
**damages** 27:16
33:21 35:4
**date** 4:15 16:19
26:10,12 48:9
**dated** 31:19 53:19
**days** 40:24 41:3,12
41:13,21,22,24
42:7,12,16 43:6
51:24 53:15
**deal** 7:10 22:9
**dealing** 9:14 48:19
**dealt** 16:24 22:20
44:16
**December** 20:21
**decided** 15:10 17:3
17:3
**decision** 13:11
**defendant** 1:11
10:22 21:13,23
40:2
**defended** 8:3 21:9
23:21 24:1
**defending** 21:12
**defense** 9:12
**Delaware** 1:10
13:14,15
**denied** 50:15
**depend** 30:25 31:4

**depends** 27:18
**deponent** 3:3 4:23
  51:20,22 53:9,14
  53:16,16
**deposition** 1:16
  4:21,22 52:1,5
  53:7,8
**depositions** 4:23
**describe** 49:16
**describing** 30:20
**designated** 8:17 9:3
  9:14
**developed** 14:1
**different** 11:17
  18:7
**diploma** 16:19
**directed** 26:24
**directly** 40:2
**disclosure** 22:20
**discussed** 10:15
**Discussion** 51:16
**discussions** 9:11
**District** 1:1,2 12:18
  16:25 17:1 18:6,9
  18:12,14,22,23
  28:13
**divide** 20:10
**DIVISION** 1:3
**document** 29:12
  31:17 32:14,17
  34:19,21,23 35:8
  35:11 36:23 37:3
  37:3,22,24
**documentation**
  29:22 33:23,25
**documents** 14:2,4
  26:21,24 28:4,6
  28:11,14,19 33:3
  34:4
**dog** 16:24 17:7 18:1
  18:5
**doing** 47:1 51:4
**dollars** 27:21
**download** 28:13
**downloaded** 28:21
**dozen** 9:10

**E**

**Drive** 1:20
**due** 33:11 35:20
**duly** 4:5 53:5,10
**duties** 51:21

**E** 3:1
**e-mail** 26:18 48:5
**e-mailed** 38:21
**earlier** 27:7 36:8
  43:9
**EASTERN** 1:3
**economy** 50:24
**effort** 35:25 41:25
**either** 7:22 23:21
  33:24 40:14 47:14
**elapse** 51:5
**elected** 31:14
**electronic** 9:4,5
  51:17,19,23
**employer** 49:18
**employment** 21:4
  22:12
**empowered** 53:6
**engaged** 21:24
**entailed** 42:3
**entered** 11:23
**entire** 38:9
**envelope** 3:11
**Erika** 16:4
**errata** 52:1
**especially** 41:25
  42:13
**estimate** 22:23
**et** 34:2 42:7
**evaluate** 36:5,6,10
  36:16 38:25
**exact** 26:10 40:21
**exactly** 20:22
**EXAMINATION**
  4:8
**examined** 3:3 4:6
  53:9
**example** 20:18
  30:21
**Excellent** 5:8,17

  51:14
**excuse** 46:25
**Exhibit** 6:15 26:11
  29:5 34:15 36:20
  36:21 37:19,20
**exhibits** 3:7,13
**existing** 15:15 20:8
**experience** 8:6
  39:24
**Express** 13:17,24
  14:12

**F**

**facsimile** 49:9
**failure** 22:11,15
  36:3
**fair** 4:24 5:21,22,24
  5:25 8:5 33:18,22
  35:6,13 40:20
  41:8,9,10,24 43:3
  43:6 45:10
**fairness** 36:17
**fall** 16:18
**false** 50:11,20 51:8
**familiar** 4:25 5:1
  34:18 43:10,11
**family** 15:21
**far** 23:4 32:12
**Fargo** 12:14,24,25
  14:10,16,24 15:24
  17:23 18:15
**father** 15:25
**father's** 16:1
**fax** 2:6 26:11,14,16
  26:17 45:7 46:5
  46:15,24 47:7,12
  47:19,22,25 48:2
  48:4,7,13,19
**faxed** 29:19 47:14
  47:18 48:16,17
**faxes** 27:6 35:22
  45:19 47:6,13,15
  48:20,22
**federal** 22:1,18
  28:16 53:13
**feds** 10:6

**fee** 35:17 39:17
**feel** 19:25 38:24
**fees** 3:16 9:16 13:23
  28:9 34:6 35:17
  35:24 36:4,18
  37:18 38:21 39:19
  39:25 40:4,6,20
  50:6
**felt** 29:24 51:6
**field** 30:21
**fifth** 12:20
**fighting** 14:2,4
**figured** 51:1
**file** 6:9 12:23 15:10
  28:23 29:17 30:2
  30:3,4 32:5
**filed** 6:19,22 10:16
  16:7,20 19:4
  23:22 30:7 31:22
  32:2,3 37:7 38:4
  38:19,20 49:5
  50:16 51:10
**filing** 17:10 32:1
  34:21 37:4,6,24
**final** 13:11 25:22
**find** 30:10 44:5
**findings** 50:18
**fine** 4:12 7:21 52:4
**finished** 16:18
**firm** 23:24 24:3,7
  24:14 45:4 50:25
**firms** 24:16
**first** 4:5 7:16 15:13
  16:5 22:9 23:24
  24:7,14 25:17
  47:5 53:10
**five** 7:2 12:13,14
  14:14,16 32:19,19
  48:24,25
**following** 47:25
**follows** 4:6
**food** 16:24 17:7
  18:1,5
**foregoing** 53:8,11
**forget** 50:14
**form** 3:11 24:25

  28:23 29:3,7,13
  29:15,17 30:7
  31:19 32:4
**formal** 51:11
**formation** 21:4
**formed** 24:20
**former** 49:18
**forth** 14:6 53:17
**found** 33:13 47:12
**Foundation** 9:4,6
**four** 7:2 10:14
  12:11,13 14:16
**Frankly** 39:23
**free** 48:3
**friend** 15:21 25:1,2
**friendly** 50:11
**front** 26:6
**Frontier** 9:4,5
**full** 4:13
**fully** 14:1
**funds** 8:19 41:16
  41:17 42:20
**further** 30:2 33:5

**G**

**geez** 12:25
**general** 10:19 19:23
  21:6,23 22:10,22
**generally** 7:7 8:13
**getting** 40:19 43:23
**give** 14:23 22:15,24
  30:16 35:10 45:18
  45:20 48:24
**given** 53:12
**go** 5:2 6:13 16:12
  18:6 20:8 21:8
  22:5 23:8 28:12
  28:20 31:3 42:1,1
  46:12
**going** 5:13 16:11
  17:14 23:23 31:1
  33:17 36:19 40:19
  43:9 48:24 49:2
**graduate** 16:14
**graduated** 24:9
**great** 51:18

groups 14:3
guess 20:2 22:25
guy's 50:25

**H**

half 20:25 23:25
handed 47:6
handing 34:16
handle 19:25 20:1
20:6 44:22
handled 44:25
handwriting 47:17
handwrote 47:21
48:14
happen 46:18,23
happy 5:20
head 5:14
header 26:12,14
hear 25:17
heard 25:8,9 43:14
held 24:17 42:21
Hey 49:21
high 20:19
highest 20:12
history 37:11,13
38:8,10,11
holding 41:17
honest 30:14
hour 22:16
hours 39:4
hundred 27:21
hypothetical 46:7

**I**

icon 45:21 46:15
idea 45:9 46:18
50:24
IDENTIFICATI...
3:7
Illinois 1:2,5 2:5
impede 5:5
in-house 49:21
Incentive 3:17
include 21:3 33:24
51:22
included 10:7

38:10
including 10:14
33:22 36:18
incomplete 46:7
indicate 38:12
individually 1:6
information 22:20
30:17 33:20,24
35:15,21 36:10,15
37:14,16 38:12,14
38:24
informed 44:10
instance 25:25
insufficient 36:10
38:24 41:3 42:8
insurance 20:21
intellectual 20:2,3
interested 15:14
46:9
introduce 6:13 29:1
34:13 36:19 37:17
investigate 30:1
investigated 50:17
investigation 50:2
51:10
involve 7:22
involved 27:9 40:3
40:5,13,18
irrelevant 49:23
Irvine 1:20 4:1
isalam@siprut.c...
2:6
Ismael 2:4 5:9
issuance 40:25
issue 8:23 11:2,3
19:12 41:14 42:25

**J**

James 25:11
January 10:20 11:7
26:12 29:19 31:19
31:24 32:2
JOB 1:25
jobs 24:17
JPMorgan 7:16
8:10,25 14:15

15:6,24 17:15
18:8 27:10
judge 14:6
Juice 10:22 12:10
14:9,16,24 15:19
16:5 17:17 18:13

**K**

K-r-o-n 16:2
K.C 1:18,24 53:4
53:21
kind 12:6 19:14
50:1,1
kinds 7:7 44:22
know 5:4,12,19 6:2
11:5,11,15 13:17
20:14,20 24:23
25:18 26:3 28:20
30:14 31:12 32:7
32:8,9 34:5 39:3,7
39:10,20,21 41:22
41:23 44:2,2,6,8
44:20,24 45:2,15
45:15,16 46:19
47:4
Kron 1:16 3:4,11
4:4,14 6:15 16:2,4
24:19,20 29:4,5
32:13 34:14,15
36:20,21 37:18,20
45:4 51:23

**L**

label 34:13
labeled 32:13
lack 5:7 35:21
36:15
Ladera 4:20
language 47:24
late 10:9
law 2:4 16:10,12,13
16:16 22:19 24:7
24:10,18 45:4
lawyers 42:11
43:19 44:3
Lawyers.com 31:12

leave 50:25
left 8:18 49:22 51:1
left-hand 47:22
legal 30:21
let's 6:14 19:1 21:7
22:9 23:8,13 26:5
29:1 30:21 34:13
35:9 37:17
letter 6:14,17 26:5
31:23 32:12 40:23
letters 14:6
leveled 50:11 51:8
LexisNexis 33:7
liability 1:5,10
LICENSE 1:24
light 36:5
limitations 51:5
limited 1:5,10
line 14:23
list 43:19 47:11
lists 32:19
litigation 3:11
19:21 29:2
little 7:12 16:16
25:19 39:23 49:17
LLC 1:9 3:9 6:11
25:15
LLP 1:5 3:8 6:10
24:20 25:8
Lodestar 39:8,17
39:20 40:4,7
long 11:6 16:10
41:6,22
look 28:20 33:1,16
34:18,25 35:9,10
38:15 45:21 46:13
looked 45:25 47:8
looking 31:17
34:19 35:11 38:11
48:8
looks 48:17
Los 18:17,20
lot 15:12 30:16
LP 21:17

**M**

machine 26:16,17
main 8:14
maintain 22:11
maintenance 21:4
major 21:1
malpractice 50:4,8
51:5
man 13:20
March 1:19 4:2
mark 29:4
marked 6:15 29:5
34:15 36:21 37:20
47:10
market 31:5
marquee 46:24
47:8
Martindale-Hub...
43:20
matter 39:4
matters 21:24
42:14
meal/rest 22:15
mean 9:9 19:6
23:10 46:19
meant 23:11
mediation 10:5
medical 5:5 22:20
meet 42:13
member 6:21 7:4
14:20 15:22 30:5
42:22
members 35:23
36:5,16 40:24
41:6,18 42:10
43:1
mentioned 5:9
12:11,13 27:7
met 25:1
method 40:4
mind 4:11 40:10
41:6
Mine 16:16
minutes 48:24,25
missing 14:14
modifications
51:25

**moment** 33:17 35:10
**MONDAY** 4:2
**monetary** 10:11 12:7
**money** 42:25
**moneys** 41:16
**monster** 13:20
**Montero** 21:17
**months** 41:9,22,24 43:3,3
**motion** 3:14,16 13:12 28:8,8,9 34:1,5,7 35:17 36:4,5,25 37:18 38:8,9,16,21 39:5 39:6,9,12,14
**Mount** 12:14
**MPRE** 24:12
**mutual** 25:2

**N**

**N** 3:1
**Naked** 10:22 12:10 14:9,16,24 15:19 16:5 17:17 18:13
**name** 4:13 5:9 10:21 12:21 15:20 16:1,3,24 17:5 24:3 29:9 41:15 43:13 45:17 50:14
**names** 24:2 25:10
**necessarily** 41:21
**need** 6:1 41:7
**needs** 5:14 19:25
**negligent** 27:18,20
**negotiated** 40:2
**neither** 16:22
**never** 14:5 19:4 25:9 40:3,13 46:22,24
**new** 13:15 18:23,24 18:25 23:10,11,11 23:16,16 41:14
**Ninth** 11:10
**nod** 5:13

**nominated** 43:18
**non-** 15:15
**nonactive** 15:16
**nonlicensed** 15:16
**Nope** 45:22
**North** 2:5
**Northern** 1:2 18:23
**notice** 19:12 25:7 26:7,9,15,20,23 26:24 28:24 29:18 29:23,24,25 30:9 33:11 50:23
**November** 47:18,21 48:9,17
**number** 20:9,10 22:23 35:20,22 39:20 45:7 47:25 48:4,7

**O**

**o0o-** 52:6
**oath** 4:5 53:10
**oaths** 53:6
**object** 15:16
**objected** 9:24 40:23
**objecting** 32:20
**objection** 3:8 6:9 6:14,16,19 8:14 8:14 9:1,2 10:8,16 10:23 11:13 13:2 13:3,5,10 16:8 17:2 18:1 26:5 30:2,4 31:22 32:5 32:12,23 33:10,16 33:19 34:22 35:20 36:3,13 37:4,6,8 37:25 38:5,19,20 40:22 49:5
**objections** 8:9,11 8:20,24 9:13 10:2 10:3 11:16,19 12:23 17:10 19:6 23:21 26:11 33:15 35:9,14 36:14
**objector** 9:17 11:18 14:20 15:23,25

16:22,22 40:14,14
**objector's** 15:20
**objectors** 11:11,17 14:3,21 15:11 19:8 25:4 27:8
**obtain** 36:7
**obtained** 9:2,8 36:1
**odd** 16:16
**offensive** 47:12
**offhand** 28:20
**office** 24:18 26:19 38:20
**officer** 4:22 52:2 53:7
**official** 50:1
**oh** 11:21 12:25 13:13,20 22:16 23:7 43:23
**okay** 4:21,24 5:17 5:23 6:3,8,13,19 6:22,25 7:3,7,10 7:15,25 8:5,8,25 9:16,19 11:4,21 12:2,9,15 13:2,7,9 13:13,25 14:9 15:4 16:9,20 17:14,20 18:4,11 19:1,14,18 20:16 21:1,25 22:7 23:4 23:13,17 24:13 25:19 26:5 27:1 31:25 32:12 37:10 40:22 41:12,19,21 42:16 43:5,7,8 44:13 47:3 48:15 48:23 49:12 51:10
**once** 24:13
**ones** 8:24
**online** 26:17 47:13
**opt-out** 10:9
**opted** 10:9
**Orange** 22:6 53:2
**order** 26:4 30:3 50:13,15
**ordering** 45:25
**organizations**

24:16
**outcome** 9:1 11:13
**overbreadth** 8:15 8:22 9:24 11:1
**overruled** 17:2 18:2
**overtime** 22:11
**owed** 50:7

**P**

**P-i-g-g-u-e** 21:18
**p.m** 26:12 47:18 48:10
**Pacer** 28:12,13,15 28:17 38:2
**Pacific** 21:17 22:9 23:19
**page** 3:3 47:13
**pages** 3:9,12,13,15 3:17 38:15,22
**paragraph** 34:25 35:1,3 36:9
**part** 20:3 22:21 39:25 45:3 47:6 50:21
**Partially** 41:5
**particular** 41:15 51:3
**parties** 14:3
**partner** 17:2 44:24
**partners'** 25:10
**partnership** 1:5 24:20
**passed** 24:13
**passing** 24:12
**patents** 20:2
**pay** 22:11 28:13 34:11
**payments** 41:10
**PC** 2:4
**pending** 12:16,22 13:2,19 17:24 18:8,9 23:6,9
**percent** 20:18
**percentage** 20:10 20:13,14,20,22 40:1,19

**percentages** 20:5
**Performed** 38:17
**period** 29:24 33:11 41:20
**perjury** 49:14 50:2 50:18
**permission** 45:12 45:18,20
**permitted** 10:9
**personally** 44:16
**phone** 27:13
**phones** 27:13
**Piggue** 21:18
**place** 49:20 51:25
**placed** 4:5 53:10
**plaintiff** 1:7 2:3 35:3
**plaintiff's** 3:14,16 10:21 12:21 36:25 37:17
**planning** 51:4
**plaque** 45:13,21 46:15 47:9
**plaques** 44:4 45:14 46:25
**please** 48:2
**pointed** 47:23
**portfolio** 21:2
**positive** 34:11
**possible** 5:3 7:20 44:20 45:6
**possibly** 16:21 30:2 30:25 33:11,12
**post** 25:23 26:1
**posted** 33:20 34:6,7 34:9,12
**potential** 33:21 35:21
**practice** 19:20,22 20:11,13,16,24,25 21:1 28:16
**practicing** 16:10 23:23,25
**practitioner** 19:24 21:6
**prefer** 43:7

Kron

**Preferably** 41:22
**preliminary** 3:14
  13:12 28:9 34:1,7
  36:25
**prepare** 32:13
**preparing** 29:14
  32:16,22
**preserve** 32:4
**preview** 45:12,21
  46:5,5,15,16,23
  46:24
**previous** 13:3
**primarily** 19:20
  36:14
**primary** 8:14
**print** 48:12
**printed** 26:18 29:9
**printer** 26:18
**prior** 19:4,5 23:23
  25:7 34:21 37:4,6
  37:24 40:8 43:5
  43:11 45:25 53:9
**Private** 22:22
**probably** 11:1
  25:18 42:12 44:14
**probate** 20:4
**problem** 6:4 40:11
  42:24 43:2
**procedural** 37:10
  37:13 38:7,10,11
**Procedure** 53:14
**proceeding** 50:10
**proceedings** 14:5
  49:24 50:1,13
**process** 4:25 5:1
  22:21 33:12 42:2
**product** 45:24
  46:10
**products** 43:25
  44:11,15,18,19,25
  45:8
**professionals** 42:11
**promotions** 48:2
**prompted** 19:7
**pronounced** 9:21
**property** 20:2,3

**proposed** 29:25
  33:2
**prosecute** 35:16
  36:11 37:14 38:13
  38:25
**prosecuted** 7:25
  21:9,11 23:21
**prosecuting** 39:4
**protect** 41:11
**Protection** 23:19
  27:4
**Protective** 21:18,21
  22:13
**provide** 37:13
  38:12 48:4
**provided** 33:23
  45:7
**provides** 37:16
  38:14
**published** 31:1,2,6
  31:10
**purchase** 45:23
  46:1
**purchasing** 44:18
  45:7
**pure** 50:21
**purports** 42:15
**Pursuant** 53:13
**pursue** 17:4
**pursued** 18:3,4
**put** 12:17 35:25
  42:13

---

**Q**

**question** 5:13,23
  13:4
**quickly** 5:3
**quit** 50:22
**Quite** 17:9

---

**R**

**Ranch** 4:20
**rating** 43:20
**reached** 9:13 17:16
**reaching** 30:23
**read** 34:21,23,24

  37:3,7,10,24 38:4
  38:7,9,23
**reading** 35:1 38:18
**really** 8:22 26:16
  49:23
**reason** 6:1 15:10
**reasonable** 41:24
**reasonableness**
  35:24 36:17
**reasons** 32:19,19
  33:18
**recall** 7:8,20 8:11
  9:1,5 10:2,24 11:2
  11:6,16,19,22
  12:5,6,21 17:18
  17:19 26:7,9,10
  29:12,13 31:22
  33:9 34:3,3,6,23
  35:1 38:18,22
  43:15 44:12 45:11
  47:1
**receive** 9:16 10:11
  26:15 30:6 31:14
  35:4 39:17,18
  42:6
**received** 12:6 19:13
  25:22 26:7,13,20
  26:22,22 29:24
  32:2 43:19 46:20
  47:7,7,14,19
  48:13,22 49:7
**receiving** 25:7 26:9
  28:24 39:21 40:16
  43:21
**Recess** 49:1
**recipient** 8:17 9:3
  9:15
**recognize** 36:22
  37:21
**recognized** 45:17
**recollection** 20:23
  26:13 28:2,21
  30:18 32:10,25
**record** 21:22 49:2
  51:16 53:11
**recorded** 53:8

**records** 22:12 44:4
**recovered** 36:2
**recovery** 35:22
  40:1
**redistributed** 43:1
**reference** 26:10
**referred** 26:14
**referring** 27:9
**regard** 27:11
**regarding** 33:20
  35:15
**regards** 41:9
**register** 40:25 42:5
  42:8
**Registry** 1:9 3:9,10
  6:11 25:15 29:2
  30:16 33:1 43:11
  43:11,15 44:1,3,5
  44:7,12,17,20
  45:12,17 46:22
  47:2,20 48:1,13
  49:4,5,10
**related** 20:15 26:21
**relative** 8:6 35:25
**release** 8:16 10:1,7
  10:8 11:3 51:20
**relesae** 8:23
**relief** 9:2,8 36:1
**rely** 36:14
**remember** 8:21,23
  10:21,25 12:8
  16:23 17:4 20:20
  20:21 24:2
**remembering**
  12:13
**remove** 47:25
**removed** 47:11
  48:5
**renewal** 20:21
**repeat** 5:19 40:8,10
  40:11
**repeating** 40:10
**rephrase** 5:19 36:8
**reported** 1:24 39:4
  39:6,18
**reporter** 1:18 5:10

  51:21 53:4,22
**represent** 15:10
  21:13 25:3,4
**representative**
  44:17
**represented** 6:6 7:3
  7:4 14:21 15:21
  16:22 27:8
**representing** 9:17
  19:7 40:14
**request** 39:17 48:5
**requested** 53:14
**requesting** 22:20
  39:11
**required** 25:25
  40:24
**research** 32:22 33:6
  33:9,13
**researched** 15:14
**reside** 4:19
**resolution** 9:13
  10:3 17:1
**resolved** 11:15,16
  11:20 13:3,5,10
  17:18
**respect** 42:16,17,24
  42:25
**responded** 49:8
**revert** 42:20
**review** 26:21 28:4
  46:12 51:24 53:15
**reviewed** 26:23,24
  28:22 33:3
**reviewing** 29:20,22
  38:22
**right** 10:2 11:7
  17:9 21:14 29:1
  45:14 48:19 51:12
  51:14
**Rising** 43:18
**road** 8:19 41:18
**roughly** 30:20
**RPR** 1:24
**Rule** 53:13
**Rules** 53:13
**running** 50:25

**Ryan** 25:13

**S**

**Salam** 2:4 3:4 4:9
  5:9 6:16 29:1,6
  34:13,16 36:19,22
  37:17,21 49:2,3
  51:17 52:4
**saw** 44:10
**saying** 42:7 46:22
**says** 35:8
**scanned** 48:16
**schedule** 12:17
  42:12
**schedules** 42:12
**school** 16:12,13,16
  24:7,10
**Scott** 1:16 3:4,11
  4:4,10,11,13,14
  6:16 16:10 24:19
  25:21 29:6 34:16
  36:22 37:21 47:15
  49:3,21 51:19,23
**searched** 44:4
**second** 7:17 12:18
  28:8
**seconds** 30:20
**secretary** 44:21,23
**section** 38:18,22,23
**see** 14:8 19:1 23:13
  28:21 32:8,11
  37:3 40:18 45:24
  46:2
**seek** 35:17 36:12
**seeking** 15:12
**seen** 14:5 43:13
  46:10 47:5
**selected** 30:22
**send** 45:12,18,20
  46:4,14,16 51:17
  52:1
**sending** 27:5 51:22
**sent** 26:17 32:1
  35:23 41:16 46:5
  46:23,24 47:4,6
  47:10,14,22 48:22

**separate** 40:16
**service** 30:17
**Services** 21:19,21
  22:13 23:19
**set** 53:17
**settlement** 3:8,10
  3:15 6:10,20 9:10
  9:18 10:6,7,12,13
  10:17 11:10,22
  17:21 25:21 26:8
  26:9 28:23 29:2
  29:18 30:1,7,9
  32:20 36:6,7,18
  37:1 39:23 40:15
  40:17,25 41:7
  42:17
**Settlement.siprut...**
  32:25
**settlements** 17:16
  19:10
**settling** 10:6
**seven** 11:12 19:2
**sheet** 52:1
**Shorthand** 1:18
  53:4,22
**show** 50:13,15
**shows** 47:19
**sight** 14:8
**sign** 52:1
**signature** 29:9
**signed** 3:11 53:17
**signing** 29:12,13
**similarly** 1:6
**SIPRUT** 2:4
**situated** 1:6
**six** 11:12 16:20
  41:9,22,23 43:3,3
**sixth** 13:14 14:11
**sleep** 5:7
**solicit** 45:19
**solicitation** 19:9,16
  43:16
**solicitations** 19:15
  43:22,23 45:16
  49:8,8
**solicited** 46:11

**somewhat** 4:25
**sorry** 17:6 21:20
  22:5 24:25 31:2
  45:14 50:5
**sought** 39:25 50:13
**sought-after** 35:24
  36:18
**Southern** 16:25
  18:5,9,12
**speak** 42:4
**speaking** 7:7
**speaks** 36:13
**specific** 8:11 19:22
  40:16
**specifically** 8:21
  10:2 12:5 17:19
  27:11 34:4 38:7
**speculating** 46:19
**speculation** 46:8
**spell** 24:5
**spend** 42:14
**spent** 39:3
**SS** 53:1
**standing** 30:3 32:4
**Stars** 43:18
**start** 8:9 18:8 19:7
**started** 16:17 23:24
  24:18 43:21
**Starting** 8:25
**state** 1:19 2:5 4:13
  12:19 22:1,2,18
  36:9 42:20 50:16
  51:11,12 53:1,5
**state's** 41:15,17
  42:21
**stated** 30:9 39:7,9
  39:12,14
**statement** 33:22
  36:8 40:21 43:9
**statements** 5:11,12
**states** 1:1 16:25
  18:22 28:12 35:3
  35:20
**status** 30:5
**statute** 7:23 51:5
**stenographically**

53:7
**step** 29:21
**Stephan** 1:5 3:8
  6:10 25:8,13
**Stephen** 16:2
**stick** 23:13
**stipulate** 51:20
**stipulated** 52:3
**stipulation** 51:21
**strange** 14:7 39:23
**Street** 2:5
**strictly** 7:24
**Strike** 13:3
**stuff** 15:13
**submit** 51:22
**subpoena** 47:7
**subscription** 30:13
  30:15 31:14 33:8
  41:23 42:9
**subscriptions** 41:1
**subsection** 38:16
**Substantial** 38:17
**sued** 50:3,6 51:6
**sufficient** 33:19
  35:14
**Suite** 1:20 2:5
**Super** 43:19 44:3
**Superior** 18:16,19
  22:7
**sure** 7:19 9:21 12:4
  23:8 30:12 32:7
  33:5 40:12 48:20
  49:25
**surplus** 8:19
**surprise** 44:6
**surprised** 44:8,9
**system** 28:13

**T**

**T** 2:4
**take** 6:1,6 19:25
  20:9 32:6 33:1,16
  34:25 35:9 48:25
  49:20
**taken** 1:17 4:21,22
  51:12

**talk** 9:23 25:19
  43:14
**talking** 15:18 23:5
  33:25
**target** 31:5
**TBD** 8:18
**TCPA** 3:10 7:10,24
  8:1,6 10:18 27:9
  27:12,17 29:2
  35:5
**TCPAs** 7:19
**team** 25:6
**technically** 16:18
**Telephone** 27:4
**tell** 7:12 23:11
  30:19
**ten** 11:11,12 16:11
  23:18
**tend** 20:16
**terms** 17:9
**terrible** 50:24
**testified** 4:6 50:9
  50:12
**testify** 5:6
**testimony** 32:3
  53:8,12
**thereto** 3:13 51:25
**thing** 32:11 41:21
  47:5 48:11
**things** 20:1 44:22
**think** 7:1,2,14
  10:16,20 11:5
  12:3,11,25 14:23
  15:5 16:19,23
  18:22 20:12,19
  21:2 22:18 23:16
  27:21 30:11 34:10
  41:9 42:10,10,16
  43:3,16,18,20
  44:9 46:15 48:24
  51:15
**Thompson** 1:16 3:4
  4:4,14
**thought** 43:5
**thousands** 14:2
**three** 12:10 14:16

23:25 29:19
**TicketMaster**
12:22,24 13:9
14:17,18 15:2,23
17:23 18:18
**time** 6:25 14:23
21:8 26:25 29:23
33:11 34:5 37:7
41:20 42:8,14,24
43:2,4,7 45:3 49:7
50:23 53:17
**times** 6:25 7:2
**tipped** 51:3,7
**today** 5:6,10 6:5
43:10
**told** 29:19 46:14
**toll** 48:3
**tons** 14:2
**total** 12:11 20:10
23:1 36:1 39:8
**touch** 20:2
**tough** 42:12
**transactional** 21:4
**transcript** 51:23,24
53:11,15,17
**trial** 35:22
**true** 53:11
**try** 5:2
**turn** 26:5 40:22
**two** 7:14,24 8:6,8
10:14 14:15 16:16
21:12,25 22:17
24:1 27:7,9 42:1
47:15 48:20,20,22
50:23
**type** 20:9 42:15
46:12
**types** 20:5
**typically** 20:6 25:3
44:21

**U**

**ultimately** 44:11
**Um-hmm** 35:12
**unable** 35:23
**uncashed** 42:19

**unclaimed** 41:16
41:17 42:19,20
**understand** 5:18
**understanding**
29:20 30:3,8
42:23
**understood** 5:15,16
5:24 48:23
**undetermined** 8:18
**unethical** 51:6
**unfair** 51:7
**Unfounded** 49:19
**United** 1:1 16:25
18:22 28:12
**unsolicited** 27:5,13
35:22
**unsubscribe** 47:23
48:6
**untruthfully** 50:12
**upset** 50:22 51:8
**uptick** 17:9
**use** 26:17 32:7

**V**

**v** 1:8 7:16 12:14
**value** 30:11,12,24
31:7,11 32:8
**verbal** 5:11,12,14
**versus** 6:11 7:17
8:10,25 12:21
14:15 21:17,18,20
**video** 30:13,14,17
30:19,22,25 31:5
31:14 32:6,7,11
33:2 41:1,23 42:2
42:6,7,8
**viewers** 31:4
**vindictiveness**
50:21
**violation** 22:18
27:4,21 35:4
**violations** 27:5,25
**vs** 3:8

**W**

**wage** 22:15

**wages** 22:11
**waiting** 51:4
**walk** 19:8
**want** 8:9 33:16
40:9 46:2 48:20
49:25
**wanted** 15:16 25:22
30:1 45:24 46:4
**wants** 51:19
**wasn't** 11:2 20:24
32:1,9
**watchdog** 9:7
**way** 4:11 44:9
**We'll** 6:13 25:19
51:20
**we're** 48:19,24
51:15
**website** 26:23,25
29:23 30:15 31:6
32:10,25 33:1,4
33:20,23 34:5,8
37:5 38:3 46:12
**weeks'** 50:23
**weigh** 35:23
**Wells** 12:14,24,25
14:10,16,24 15:24
17:23 18:15
**went** 10:5 11:9
16:17 24:18,19
26:23 30:15 32:10
32:24 33:1
**Western** 16:13
21:17 22:9 23:19
**Westlaw** 33:7,8,9
33:14
**wife** 15:23
**wife's** 16:3
**willful** 27:19,22,25
28:1
**willing** 26:1
**willingly** 26:4
**withdrawal** 10:8
**work** 9:16 21:4
24:9 25:6 38:17
**worked** 24:11,14
**working** 42:15

50:22
**wouldn't** 17:11,13
44:6 46:4
**wound** 10:5

**X**

**X** 3:1

**Y**

**yeah** 9:2,21 10:20
11:8,24 12:1,3
13:20 17:19 18:3
18:25 28:2 32:6
45:2 46:2 48:12
**year** 15:11 16:14
17:6 23:1,2,3,4
**year-round** 16:17
**years** 16:11,17
23:18,25
**York** 13:15 18:23
18:24,25

**Z**

**Zouras** 1:5 3:8 6:10
25:8,11

**0**

**01/14/2015** 3:11
**01/16/2015** 3:8

**1**

**1** 3:8 6:15 32:13
33:16
**10:18** 49:1
**10:22** 49:1
**10:28** 52:5
**12:00** 47:18 48:10
**14** 3:13 10:21 26:12
29:19 31:19
**14-cv-943** 1:8 3:9
3:13
**15** 23:16
**16** 31:24
**1600** 2:5
**17** 2:5
**175,000** 39:11
**19** 47:18,21 48:9,17

**2**

**2** 3:10 29:4,5 35:9
35:14,20,20
**20** 32:6
**2002** 16:17
**2004** 16:18
**2005** 16:15,19
**2009** 24:19
**2011** 24:19
**2012** 25:18 43:18
44:14,23
**2013** 16:7,21 19:4,5
22:24 23:9 47:18
48:10
**2014** 11:7 13:1
14:24 15:3,5,7,9
15:11 16:21 17:8
17:9 22:24
**2015** 1:19 4:2 23:15
26:12 29:19
**209,671** 39:8
**2171** 1:20
**21st** 32:2
**23** 1:19 4:2
**236-0000** 2:6
**24** 3:15
**240** 1:20
**28** 34:25 35:1,3
**29** 3:10
**2nd** 51:18

**3**

**3** 3:12,13 34:14,15
35:9,14 36:3,9
**3/2/79** 4:16
**30** 23:3,9 30:20
51:24 53:15
**30(e)** 53:13
**312** 2:6,6
**34** 3:13
**36** 3:14 4:18
**37** 3:16

**4**

**4** 3:4,9,14 36:20,21
40:22

**40** 30:22,22,23,24
**42** 3:17
**465.6** 39:4
**470-6588** 2:6

_____
**5**
**5** 3:16 37:19,20
**5,000** 26:1
**5:08** 48:18
**50** 23:3,9
**500** 27:23 35:4
**51** 20:18
**561** 48:3

_____
**6**
**6** 3:8 38:15,22
**6:00** 26:12
**60602** 2:5
**613-8472** 48:1
**6172** 1:25
**650-6931** 48:4
**6728** 1:24 53:5,22

_____
**7**
**7** 38:15,22

_____
**8**
**855** 48:4

_____
**9**
**9:15** 1:21 4:2
**90** 40:24 41:3,12,13
   41:21,22,24 42:7
   42:12,16 43:6
**949** 48:1
**952-4100** 48:3